## POIRE *v.* WELLS.

*(Supreme Court of Colorado, December Term, 1882.—Appeal from the Lake County District Court.)*

1. PUBLIC LANDS—ACTS OF OFFICERS OF LAND DEPARTMENT—PATENT. The officers of the Land Department of the Government of the United States, in passing upon applications for patent and proof in support thereof, exercise a judicial function, and their judgment as to matters of fact, properly determinable by them, is conclusive, when questioned in a collateral proceeding; and patent so granted is unassailable, except by direct proceeding for its correction, or cancellation; this, however, only in a case in which the Land Department had jurisdiction to act.

2. SAME—MINERAL GROUND—TOWN SITE. Whether any portion of the public domain is "mineral ground" is a fact cognizable by the Land Department. Land embraced within a town site, if unoccupied, is not exempt from location as mineral land, but only from settlement and sale under the pre-emption laws.

3. SAME—CLAIM AND LOCATION. The distinction recognized between a mining "location" and "claim;" a claim may embrace any number of contiguous "locations," all of which may be included in one patent.

BECK, C. J. Wells, the appellee, brought an action against the appellant in the District Court of Lake county, on the 30th day of April, 1879, to recover the possession of lot thirteen, block six, of Stevens & Leiter's subdivision of U.S. survey No. 271.

The lot in controversy is situated in the city of Leadville. Plaintiff claims title through Stevens & Leiter, to whom a patent was granted by the United States, on the 5th day of November, 1878, for a tract of land embracing the lot in controversy.

The defendant's amended answer sets up, among other defenses, that this patent, which is the source and foundation of plaintiff's title, is fraudulent and void. That prior to any claim made by Stevens & Leiter to the premises in controversy, and while said lot and premises comprised a portion of the public domain of the United States, and was unoccupied and unclaimed by any one, the defendant's grantor took possession of the same and made valuable and permanent improvements thereon. Afterwards, when the said Stevens & Leiter made their application for a patent to ground including said lot, they induced defendant's grantor to refrain from adversing their application, by false and fraudulent representations, and by promises to execute a deed of conveyance to him of said lot, after issue of the patent, in consideration of his claim and improvements, and the payment of the nominal sum of twenty-five dollars. That in violation of said premises, they fraudulently conveyed the lot to the plaintiff, after issue of the patent.

It is charged that the grantees named in the patent imposed upon the officers of the Government, by causing false and fraudulent representations to be made them for the purpose of procuring this patent. They represented that the ground cov-

ered by it was placer mining ground, and the patent was granted for a placer mining claim, whereas the land granted was not and never had been placer ground.

Another charge of fraud is in these words:

"That on, to wit: the first day of July, A. D. 1878, and long before any application for such mining patent had been made, the ground included in and covered by said patent was a natural and prospective center of population for a town site, with a population of about ten thousand people, with a township organization known as the town of Agassiz, with town officers, streets, alleys, schools, churches, smelters, banks and residences, and was wholly reserved from location, entry or sale under the mining laws of the United States, or the State of Colorado, and that said Stevens & Leiter well knew that fact when they made application for said patent."

It is further charged that the patent covers several distinct and separate locations, containing more than twenty acres for each individual locator, which were made since July 9, 1870. That the patent contains more than 160 acres of land, all of the locations covered by it aggregating 298 32-100 acres. That separate applications were not made for each location. That proper notices were not posted; that the proper work was not done on each location; separate notices of the intention to apply for patent were not published, nor were separate plats, surveys or abstracts filed as required by law.

The plaintiff demurred to that portion of the amended answer which denied the validity of the patent, assigning as grounds of demurrer, that the patent cannot be attacked in a collateral proceeding, but for the purposes of this suit is conclusive evidence of the title of the patentees to the premises conveyed therein.

The demurrer was sustained, and the defendant elected to abide by his said amended answer. The cause was then tried by the Court without a jury, resulting in a finding and judgment for the plaintiff.

By stipulation of counsel for the respective parties, the only question presented for our consideration is the validity of the patent.

50

All the questions raised by the demurrer to the answer have recently been passed upon by the Supreme Court of the United States, in the cases of *St. Louis Smelting and Refining Co.* v. *Kemp and Nuttall*, 14 Otto, 636, and *Steele et al.* v. *St. Louis Smelting and Refining Co.*, 3 Colorado Law Reporter, 221. It will, therefore, only be necessary for us to call attention to the rulings made by that Court, in respect to the questions arising in this case, as they must be regarded as final and conclusive.

Mr. Justice Field, who wrote the opinions of the Court in both cases, states what provisions the government has made for the disposition of the public lands, and the various steps and proceedings necessary to be taken and had, especially in applications for mineral lands before the title can pass by the issuance of a patent. He says the various provisions are all supervised by the Land Department, which has been created for this purpose, and for the purpose of seeing that the requirements of different acts of Congress are fully complied with.

This department constitutes a part of the administrative and executive branch of the Government. The officers of this department hear testimony upon the matters presented for their consideration and pass upon its credibility and weight. In this respect they exercise a judicial function, and their judgment as to matters of fact properly determined by them is conclusive when brought to notice in a collateral proceeding. Upon issuance of the patent the presumption obtains that all the requirements preliminary to its issue have been complied with. The Court holds that this presumption is not open to rebuttal in an action at law, and that the patent itself is unassailable, except by a direct proceeding in equity for its correction or annulment.

This doctrine is limited to cases where the Land Department had jurisdiction to act and to execute the grant. Where a want of jurisdiction in the Land Department exists, its action is held to be examinable at law. The Court cites, as examples of want of jurisdiction, cases where the lands did not belong to the United States, or had previously been disposed of, or where Congress had made no provisions for their sale, or had reserved them from sale.

It is further said, that whenever the patent is absolutely void on its face, it may be impeached collaterally in a Court of law. The expression "void on its face," is defined to mean "that the patent is seen to be invalid, either when read in the light of existing law, or by reason of what the Court must take judicial notice of; as, for instance, that the land is reserved by statute from sale, or otherwise appropriated, or that the patent is for an unauthorized amount, or is executed by officers who are not entrusted by law with the power to issue grants of portions of the public domain."

Referring now to the charges of fraud set up in the answer, by means of which the patent is alleged to have been obtained in the present case, it is clear from the cases cited that the patent cannot be attacked on this ground in an action to eject the defendant from a portion of the premises therein conveyed to the plaintiff. The patent is regular upon its face, and, in the language of Mr. Justice Miller, in *Johnson* v. *Towsley*, 13 Wall., 83, "no inquiry can be permitted into the circumstances under which it was obtained," in this proceeding. The rule applies with equal force to the averment of the answer, that the ground patented was not mineral ground. This was a question of fact cognizable by the Land Department, and the presumption obtains that the evidence produced before it upon this, and all other matters properly determinable by it, justified its action in executing the grant.

The answer avers that the patent is void upon its face, for the reasons, that the land embraced within it was a town site, reserved from sale under the mining laws of the United States, and that it covers several separate locations, made since July 9, 1870, containing more than twenty acres for each individual claimant, and exceeding in the aggregate 160 acres of land.

In the case of *Steele* v. *St. Louis Smelting & Refining Co.*, *supra*, the answer contains an averment, that the defendants were the owners of the land in controversy, "by superiority of possessory title and priority of actual possession," of the premises, as part of a town site on the public domain of the United States, located and occupied since June, 1860.

Upon this question Mr. Justice Field says:

"Land embraced within a town site on the public domain,

when unoccupied, is not exempt from location and sale for mining purposes; its exemption is only from settlement and sale, under the pre-emption laws of the United States. Some of the most valuable mines in the country are within the limits of incorporated cities, which have grown up on what was, on its first settlement, part of the public domain; and many of such mines were located and patented after a regular municipal government had been established."

He further says:

"The acts of Congress relating to town sites recognize the possession of mining claims within their limits, and forbid the acquisition of any mine of gold, silver, cinnabar or copper within them, under proceedings by which title to other lands there situated is secured, thus leaving the mineral deposits within town sites open to exploration, and the land in which they are found to occupation and purchase, in the same manner as such deposits are elsewhere explored and possessed, and the lands containing them are acquired. R. S. (U. S.), 2386, 2392."

The learned Justice concludes as follows upon this branch of the case:

"Whenever, therefore, mines are found in lands belonging to the United States, whether within or without town sites, they may be claimed and worked, provided existing rights of others from prior occupation are not interfered with. Whether there are rights thus interfered with which should preclude the location of the miner, and the issue of the patent to him or his successor in interest, is, when not subjected under the law of Congress to the local tribunals, a matter properly cognizable by the Land Department, when application is made to it for a patent; and the inquiry thus presented must necessarily involve a consideration of the character of the land to which title is sought, whether it be mineral, for which a patent may issue, or agricultural, for which a patent should be withheld, and also to the citizenship of the applicant."

The foregoing views fully answer the objections urged against the patent, under this head. It was not pretended that the land was reserved from sale by special act of Congress, but simply by force of the mining statutes, a position shown to be untenable.

The opinion in the case of *St. Louis Smelting & Refining Co.* v. *Kemp and Nuttall, supra,* is equally decisive of the other question, viz.: the number of separate placer locations which may be included in one patent.

The mining act of Congress of July 9, 1870, limited the location of a placer claim to 160 acres for one person, or an association of persons; the act of May 10, 1872, restricted locations to twenty acres for each claimant. In the above case the patent covered 164 acres and a fraction of an acre, and the Court held the patent to be good, saying:

"There is nothing in the acts of Congress which prohibits the issue of a patent for that amount. They are silent as to the extent of a mining claim. They speak of locations, and limit the extent of mining ground which an individual, or an association of individuals, may embrace in one of them. There is nothing in the reason of the thing, or in the language of the acts, which prevents an individual from acquiring, by purchase, the ground located by others, and adding it to his own."

The Court then states the distinction between a "location" and a "mining claim," as follows:

"A mining claim is a parcel of land containing precious metal in its soil or rock. A location is the act of appropriating such parcel, according to certain established rules.       *
*       *       If a miner has only the ground covered by one location, his 'mining claim' and 'location' are identical, and the two designations may be indiscriminately used to denote the same thing. But if, by purchase, he acquires the adjoining location of his neighbor—that is, the ground which his neighbor has taken up—and adds it to his own, then his mining claim covers the ground embraced by both locations, and henceforth he will speak of it as his claim. Indeed, his claim may include as many adjoining locations as he can purchase, and the ground covered by all will constitute what he claims for mining purposes, or, in other words, will constitute his mining claim, and be so designated."

The conclusion arrived at is, that there is no limitation put upon the sale of the ground located, nor upon the number of locations which may be acquired by purchase, nor upon the number which may be included in a patent.

It follows, therefore, that the patent is not void upon its face, for any of the reasons alleged in the answer, and that it can only be impeached for the irregularities and fraudulent acts alleged, in a direct proceeding to set it aside.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

*T. A. Green,* for appellant.

*Weston & Rowell,* for appellee.