## JOHN J. FLANAGAN v. H. C. FORSYTHE.

### (Filed July 30, 1897.)

1. TORT—*Liability For—When Considered a Debt Contracted.* The congressional enactment providing that no lands acquired under the federal homestead laws "shall, in any event, become liable for the satisfaction of any debt or debts contracted prior to the issuing of patent therefor," includes a liability for a tort growing out of a breach of contract warranting the title to certain personal property.

2. HOMESTEAD—*Exemption From Liability For Debts—Expires When.* The exemption from liability for debts of lands entered as homesteads, provided by sec. 2296 of the revised statutes of the United States, no longer applies to said lands after final proof has been made and final, or patent, certificates issued therefor.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before Henry W. Scott, District Judge.*

*Field & Shear,* for plaintiff in error.

*Amos Green & Son,* for defendant in error.

### STATEMENT OF FACTS.

The following are the material facts in this case, to-wit:

1. On February 15, 1890, Jefferson L. Byrne sold to plaintiff in error a span of horses, fraudulently representing that the said horses were his (Byrne's) property, when, in fact, they were owned by one J. A. Little who, on the 27th day of January, 1891, legally took the possession thereof from said plaintiff in error.

2. The said plaintiff in error, on the 3rd day of February, 1891, brought an action in the district court of Oklahoma county for damages, in the sum of five hundred

dollars, against the said Byrne, on account of the fraudulent sale to him of the said horses and the failure of the title thereto, and in said action, on said date, caused an attachment to issue out of said court against the property of the said Byrne, which said writ of attachment was forthwith levied upon the southeast quarter of section 30, township 14, north, range 1, west I. M., and the said Byrne was duly served in said action, and, subsequently thereto, entered his appearance therein.

3. On January 31, 1893, the said cause of *John J. Flanagan v. Jefferson L. Byrne* was regularly called for trial in said court and the said court and the said Byrne failed to appear but made default therein, and thereupon the said Flanagan introduced his evidence in said cause upon which judgment was rendered in his favor for the sum of $415 and costs of said suit, and the attachment theretofore issued out of said court and levied upon said above described tract of land was duly sustained, and an order of sale made directing that so much of said tract as was necessary be sold and the proceeds derived therefrom applied to the payment of said judgment and costs.

4. Some time prior to the sale of said span of horses to said plaintiff in error by the said Jefferson L. Byrne, he (Byrne) entered the said tract of land, so levied upon and ordered sold under said writ of attachment, as a homestead under the laws of the United States, and, on August 11, 1890, made final proof therefor at the United States land office at Oklahoma City, O. T., and received from the receiver of said land office at final or patent receipt for said tract of land, and a patent therefor was duly issued to him by the United States on November 3, 1891, and the complete legal and equitable title to the said land re-

mained in said Jefferson L. Bryne up to the time of the
rendition of the said judgment against him and in favor
of the plaintiff in error.

5. On July 12, 1893, the said Jefferson L. Byrne, for a
valuable consideration, by deed, conveyed all his right,
title and interest within and to said above described
tract of land to H. C. Forsythe, the defendant in error
herein, who, on August 23, 1893, and before any execu-
tion had been issued on the judgment hereinbefore men-
tioned and set out, commenced an action in the district
court of said Oklahoma county, Oklahoma Territory, to
restrain the said plaintiff in error from causing execu-
tion to issue on said judgment against the said above
described tract of land, to cause the said judgment to be
vacated, annulled and set aside in so far as it affected in
any .way the title to said land, and to have his own title
thereto quieted and all clouds removed therefrom.
Plaintiff in error answered by general denial, and fur-
ther alleging that his judgment lien was prior and supe-
rior to any title acquired by said defendant in error
from said Byrne by reason of said deed of conveyance.

6. On the 17th day of October, 1894, the said cause of
*H. C. Forsythe v. John J. Flanagan, et al.*, was called for
trial and, after agreement of parties thereto, was, by the
court, referred to L. B. Treadwell, Esq., an attorney of
Oklahoma City, "to hear and determine the same on both
questions of law and fact," and the said referee, after
several hearings and contradictory reports in said cause,
and re-references thereof, finally decided the same in
favor of the said H. C. Forsythe, defendant in error here-
in, and recommended that a judgment be entered in his
favor for the relief demanded in his said petition; there-

after, and on January 30, 1895, the court entered judgment in said cause, affirming the last report of the said referee, and the said John J. Flanagan, after his motion for a new trial had been duly filed, overruled, and the ruling of the court thereon excepted to, brings error for the purpose of reversing said judgment.

Opinion of the court by

KEATON, J.: The decision of this cause depends entirely upon the construction to be given sec. 2296, of the revised statutes of the United States, which reads as follows: "No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor." Counsel for plaintiff in error contend that the judgment against him should be reversed on two grounds: First, because his claim against the said Byrne never became a debt within the meaning of the above section until after judgment had been obtained thereon, viz: January 31, 1893, and patent to said tract of land having issued long prior thereto, said judgment at once became a lien thereon. Second, that the commutation of a homestead entry and the making of final proof and obtaining the final, or patent, certificate for the tract of land covered by said entry by a person qualified to obtain title to such land, who has complied with the requirements of the law regulating the disposition of same, is, so far as the question herein involved is concerned, equivalent to the issuance of the patent itself to such person.

We do not think the first contention of counsel is supported either by the weight of authority or the better reason. The writer's views, upon the proposition first

raised, are perfectly expressed by Chief Justice Kelly, speaking for the court, in *State v. O'Neal*, 7 Ore. 141, where, in construing said sec. 2296, R. S. U. S., he says:

"The words 'debts contracted' do not necessarily mean debts or obligations incurred by an agreement of parties. The word contract has a more extensive signification than to make an agreement. Debts contracted in the ordinary acceptation of the term will include liabilities incurred. If, for a trespass committed by a homestead claimant, a judgment for damages should be recovered against him before the issuing of a patent for the land, we hold that the homestead could not lawfully be sold on an execution issued upon the judgment after the date of the patent. The object congress had in view, by the enactment of that law, was to secure permanent homes to settlers on the public domain, and in no event to allow them to be sold upon execution to discharge any liability incurred by the homestead claimants before the patent should issue."

The liability of Byrne to plaintiff in error was complete on January 27, 1891, when the latter lost the property which he had purchased, under guaranty of title. from the former. If this was not so, how did plaintiff in error maintain his action, accompanied by the ancillary proceeding of attachment, against Byrne? See also upon this proposition, *Smith v. Omans*, 17 Wis. 407; *Mertz v. Berry*, [Mich.] 59 N. W. 445; *Warner v. Cammack*, 37 Io. 642; *Loomis v. Gerson*, 62 Ill. 11.

We also concur fully with the reasoning of the court, per Cole, justice, in *Warner v. Cammack*, *supra*, upon a question almost identical with the one here involved. That was a case where the plaintiff had sold to defendant "a certain patent improvement in a mop wringer, for the county of Blackhawk, in Iowa, for the sum of $100," and the defendant had, thereafter, in a justice's court, ob-

tained a judgment for damages against him in the sum of $100, "in an action brought for fraudulent representations, etc., in the sale of said patent improvement in mop wringer," a transcript of which said judgment for the sum of $100 had been duly filed in the district court clerk's office of Fayette county, in said state, and execution issued thereon, which had been levied on the premises in controversy. Then Warner, the defendant in said action before said justice of the peace, brought this action to enjoin the sale of said premises under said execution, on the ground that they were exempt as a homestead. It was conceded on the trial of said action that said premises did constitute the homestead of the plaintiff therein, but it was contended that they were subject to execution under a section of the Iowa statute providing that "the homestead may be sold on execution for debts contracted prior to the purchase thereof," etc. (Sec. 1992, McLain's An. St. 1884.) In construing the words "debts contracted," the supreme court of Iowa says:

"And hereon the question is resolved to the single point, whether the cause of action whereon the judgment was rendered, was a *debt*, within the meaning of that word as used in the homestead exemption statute. We hold that it was a debt. And this, because the plaintiff in that action might have waived the tort and brought his action for money paid to the use of the defendant therein. Wherever a party has derived a pecuniary advantage from a wrong done by him, and it is competent for the person suing thereon to waive the tort and maintain his action upon the promise implied by the law, there the obligation to pay is a debt, and this, regardless of the form of action in which that obligation is sought to be enforced."

Counsel for plaintiff in error cite a number of decis-

ions to the effect that a cause of action accruing from a tort cannot be considered a debt against the wrong doer until after judgment has been rendered thereon, and, among said cases so cited, are the following: *Hill v. Bowman*, 35 Mich. 191; *Hart v. Barnes*, 24 Neb. 782, 40 N. W. 322; *Muser v. Stewart*, 21 O. St. 353 and *In re Wheeler*, 34 Kan. 96, 8 Pac. 276. An examination of these decisions shows that in none of them is the direct question here involved considered. It cannot hardly be contended that *Hill v. Bowman*, *supra*, decided by the supreme court of Michigan, should be given controlling weight against the position we have taken upon this proposition, in the face of the fact that the supreme court of said state, in the later case of *Mertz v. Berry*, fully sustain our position by holding that "Under Const. art. 16, sec. 2, providing that 'every homestead   *   *   shall be exempt from forced sale on execution or any other final process from a court for any debts contracted after the adoption of this constitution' a homestead is exempt from execution on a judgment recovered in an action of tort."

In this case the authorities on both sides of the proposition under discussion are collated. We cannot see that *Hart v. Barnes*, *supra*, supports the contention of counsel for plaintiff in error, but think it more nearly in line with the Iowa case previously quoted from herein, as it is therein held by the supreme court of Nebraska that:

"When a person undertakes any employment, trust, or duty, he thereby, in contemplation of law, impliedly contracts with those who employed him to perform that which he has undertaken with integrity, diligence and skill; and if he fails to do so it is a breach of contract.

"In cases of bailment, at common law, there has always been a choice of forms of action, between actions

on the case and *assumpsit*.  Case lies for breach of duty, and *assumpsit* for breach of promise.  A duty arises out of a promise, and the law implies a promise out of most duties.  The code, while abolishing the forms of actions, has preserved to a suitor all the rights and remedies known to the law.  Therefore, if a promise is implied, either from a breach of duty or from the undertaking of the defendant, an attachment in a proper case will lie."

The Ohio and Kansas cases, *supra*, are based upon an entirely different question to the one under consideration here, and hold that "the provision in the bastardy act directing the putative father to be committed to jail in default of giving security to ·perform the order of the court charging him with the maintenance of his illegitimate child, is not in conflict with sec. 15, art. 1, of the constitution, which declares that 'No person shall be imprisoned for debt in a civil action * * unless in cases of fraud.'  The sum in which the defendant is charged with the maintenance of the child, is not a debt within the meaning of this provision of the constitution."

There are some cases, however, which hold that a statute exempting the homestead of the family from all debts contracted, except certain specified ones, does not include a liability arising solely from a tort.  (*Robinson v. Wiley*, 15 N. Y. 489; *McLaren v. Anderson*, 81' Ala. 106. 8 So. Rep. 188.)

The second contention of counsel for plaintiff in error is a more serious one and in our opinion, is better founded both in reason and authority, although it must be conceded that the decisions thereon are not uniform.  To our minds the best reasoned opinion upon this proposition to be found in the decided cases is that of Mr. Justice

Valentine, in *Leonard v. Ross*, 23 Kan. 292, which was fully concurred in by both Chief Justice Horton and Mr. Justice Brewer, wherein, among other things, it is said:

"Ross was entitled to his patent on May 19, 1874, and therefore his rights must be determined as though the patent had in fact been issued on that day.   *   *   The failure of the officers to issue the patent at the time that it ought to be issued does not affect the rights of any person. The property becomes the purchaser's at the time he pays for it, with the bare, naked legal title only remainng in the government. After Ross paid his money, he did not any longer hold his land under the provisions of the congressional homestead act. When he paid for his land, he thereby took it out of the further operation of said homestead act; and, after paying for it he in fact abandoned it as a residence, which he could not properly have done, if he had still been holding it under the provisions of said homestead act. That provision of said homestead act which refers 'to the issuing of the patent' has reference to that period of time when the patent ought to be issued, and not to the mere clerical work of issuing it."

See, also, to same effect *Kansas Lumber Co. v. Jones*, 32 Kan. 195, 4 Pac. 74; *Struby-Estabrook Mercantile Co. et al. v. Davis*, [Col.] 31 Pac. 495.

In the case of *Barnard v. Boller*, 38 Pac. 728, the supreme court of California affirmed an opinion delivered by the supreme court commissioners of that state, per Searls, C., placing an exactly opposite construction upon said section, (2296 R. S. U. S.)  to that placed thereon in the decisions above cited, and their reasons for so doing are stated in the following language:

"Under that statute the condition or existence of the equitable title is not made the criterion of liability for antecedent debts. The land shall not, in any event, be-

come liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor. .The date of issuing the patent is made the point of time which divides the liability and non-liability of the land. It is this event or act which determines the question of liability, and not the title or the question of relation as applicable to the holder thereof, which must be taken as the criterion. Congress has in plain and direct terms exempted the land from the debts of its owner or claimant contracted up to the happening of a specific event, viz: 'to the isuing of the patent therefor.' Had the statute provided that homesteads should not be liable for the debts of the patentees thereof contracted during their natural lives, or for ten years after the issuance of the patent, its constitutionality being conceded, the end of the life of the patentee or the expiration of the ten years would afford the test by which to measure the liability, and in such a case, it is believed, no just claim of liability could be maintained on account of debts contracted before the expiration of the time specified or even mentioned upon the ground that the patentee had previously held the title, legal or equitable. The provision of sec. 2296 is regarded as being equally explicit with the case supposed."

We cannot agree with the reasoning just quoted, but believe it to be faulty in many respects. It does not give to the congressional enactment a reasonable interpretation but assumes that that body intended thereby to arbitrarily fix the date of the performance of a mere clerical duty as the time when homesteads might become liable for debts contracted by those who had entered them, instead of the time at which such entrymen had performed all of the requirements of the law on their part entitling them to such patents. The officers of the government whose duty it is to issue these patents might, on account of the accumulation of work, delay the issuance thereof for a period of five, or even ten, years after the entrymen

had become entitled thereto and yet, under the interpretation given the statute in question in the California case, the holder of the final or patent receipt could rest assured that the tract of land, of which he had, to all intents and purposes, become the owner, could not be held liable for any debts which he might contract; and during all of this time he may have also owned and occupied, with his family, another tract or parcel of land, consisting of not more than 160 acres, if in the country, and not more than 1 acre, if in a town or city, separate and apart from the tract entered by him and which, under our territorial laws, would also be exempt from execution and sale, as the homestead of the family, by reason of such occupancy. (See chap. 34, Okla. St. 1893.) We do not think congress ever intended that such a construction should be placed upon this section. When an entryman complies with all of the requirements of the law and acquires such title to the tract of land entered as a homestead as to enable him to dispose of same at will, and requires him to pay taxes thereon, we can see no reason why the exemption provided in said section of the revised statutes should still be held to apply thereto.

"The holder of a register's certificate of the purchase of a lot in the town of Dubuque, lawfully acquired, and issued by the register under the two acts of the 2nd of July, 1836, and 3rd of March, 1837, has such an equitable estate in the lot, before the issuing of the patent, as will subject the lot to sale under execution under the statute of Iowa." (*Levi v. Thompson,* 4 Howard, 45 U. S. 17.)

"When the entry of land is made and certificate given, the particular land is segregated from the mass of public lands and becomes private property." (*Witherspoon v. Duncan,* 4 Wallace, 71 U. S. 210.)

"The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued. When, in fact, the patent does issue, it relates back to the inception of the right of the patentee so far as it may be necessary to cut off intervening claimants." (*Stark v. Starr*, 6 Wallace, 73 U. S. 402.)

As to the right of a homestead entryman to convey the tract of land covered by his entry after having made final proof and received final certificate therefor, see *Lewis v. Witherell*, 36 Minn. 386, 31 N. W. 356; *Jones v. Yoakam*, 5 Neb. 265; *Myers v. Croft*, 13 Wall. 80 U. S. 291; *Stone v. Young*, 5 Kan. 229; *McMahon v. Welsh*, 11 Kan. 280; *Ogden v. Walters*, 12 Kan. 282; *Barney v. Dolph*, 97 U. S. 7 Otto. 652.

It has been held in many well considered opinions that the homestead entryman may convey or encumber such land, even before having made final proof and received said final receipt therefor. (*Lang v. Morey*, [Minn.] 42 N. W. 88; *Spies v. Newberg*, 71 Wis. 279, 37 N. W. 417; *Orr v. Stewart*, ['Colo.] 7 Pac. 693; *Fuller & Co. v Hunt*, 48 Io. 163.)

That the right is vested in the state, wherein it is situated, to tax a tract of land entered by a citizen as a homestead, under the laws of the United States, after he has complied with all of the requirements of said laws and made final proof and procured the final or patent certificate therefor, see *Carroll v. Safford*, 3 Howard, 44 U. S. 441; *Witherspoon v. Duncan, supra*; *Bellinger v. White*, 5 Neb. 399; *Wisconsin Cent. R. Co. v. Price Co.* [Wis.] 26 N. W. 93; *Missouri River Ft. S. & G. R. Co. v. C. A. Morris, Treasurer*, 13 Kan. 302.

While it is true that taxes are not debts they are nevertheless liabilities which "operate on the tax payer *in invitum.*" (*Slaughter v. City of Louisville,* [Ky.] 8 S. W. 917.)

It is also insisted by counsel for defendant in error that "Section 2296 must be construed as an absolute condition annexed to the grant," and therefore the facts that the tract of land was no longer impressed with the homestead character and that the object of congress in enacting said section had been fully accomplished after making final proof and receiving final certificate therefor, should be given no weight in construing same. This contention is, in our judgment, not only untenable but inconsistent with the one first made by counsel to the effect that this section is a statute of exemption. It contains none of the necessary elements of a condition, either precedent or subsequent, as defined by the ablest law writers and jurists of both England and America. (See 3 Am. & Eng. Ency. Law, 422 and note 1.)

Furthermore, if the provisions of this section be held to constitute an absolute condition attached to the grant it is doubtful whether such condition can be waived or avoided except by the act of God or of the congress of the United States, which imposed it. (3 A. & E. Enc. Law, *supra*; *Michigan State Bank v. Hastings,* 1 Doug. [Mich.] 225.)

Then, under such an interpretation, what disposition is to be made of the long and unquestioned line of decisions holding that the homesteader may subject such tract to the payment of debts contracted subsequent to final proof and prior to the issuance of patent by voluntarily creating specific liens thereon to secure the payment of

said debts?   We think no such interpretation is justified either by reason or authority.   In construing said section, it is but fair to presume that congress, in enacting same, assumed that when a homestead entryman became entitled to a patent to a tract of land under existing laws, it would be issued at once. Legislative bodies rarely take into consideration the period between the time when, under the law, executive officers should perform certain clerical duties and the time when such duties are actually performed.   To adopt the construction contended for by counsel for defendant in error would be to declare all such lands free from the payment of debts contracted by the owners thereof for building material furnished to erect improvements thereon and for the labor performed in erecting said improvements, notwithstanding our territorial statutes provide that such creditors may secure a special lien on said lands and improvements for the payment of their claims; or we must hold that such lands are exempt from the payment of all the debts so contracted by their owners except when otherwise provided by the territorial legislature for, if it be held that, in contracting debts of this class, the law becomes a part of the contracts and the owners thereby voluntarily authorize the creation of the liens provided by law, then we must concede that the legislature has the power to subject said lands to the payment of all the debts contracted by the owners thereof after the receipt of final certificate.

Again, if said lands cannot become liable, in any event, for the payment of debts contracted by the entrymen subsequent to the making of final proof and prior to the issuance of patents, an entryman might after making such

proof and before patent issues sell the tract so entered and buy another parcel of land, with the proceeds, to be occupied by himself and family as a homestead under the territorial laws, and then repurchase the tract originally entered as a homestead under the federal laws, and yet the latter would still be exempt from the payment of a debt contracted by said entryman even after such repurchase and before the actual issuance of patent. Such an interpretation of the section under consideration would be wholly inconsistent with the purposes congress sought to accomplish by its enactment as expressed by numerous decisions of the supreme court of the United States. (See those cited, *supra*.) Nor is it supported, even by the supreme court of California, which was the first to attempt to give said section a literal interpretation. (See the recent case of *DeLaney v. Knapp*, 43 Pac. 598.)

Counsel for defendant in error cite *United States v. Schurz*, 102 U. S. (12 Otto) 378, as holding that a homestead claimant's right to a patent is not complete until such instrument has been prepared and "signed, sealed, countersigned and recorded." We do not think this a proper interpretation of said decision which holds that "when a patent to a citizen for a part of the public lands has been regularly signed by the president, and sealed with the seal of the government, countersigned by the recorder and duly recorded, the right to its possession by the grantee is perfect, and a writ of *mandamus* will lie, to the officer in whose possession it is, to compel its delivery."

We do not understand this holding to mean that "the executive officers who constitute the land department" can arbitrarily and without cause refuse to perform the

acts therein designated as essential in the issuance of a patent to one who has fully complied with all the requirements of the law and is otherwise qualified to receive same, and that the person so entitled to said patent would have no legal remedy to compel the performance of said duties by the officers so charged therewith. Such a doctrine would be monstrous and could never be tolerated by either the legislative or judicial branch of our government, unless the final, or patent, certificate should be treated as equivalent, in all respects to a patent.

Counsel also cite *American Mortg. Co. v. Hopper,* 64 Fed. 553, as deciding that the government still retains the title to public lands after the issuance of the final receipt to a pre-emption or homestead claimant. This, of course, is true so far as the naked legal title it concerned, but if such claimant has performed all of the conditions required of him by the law authorizing and directing the disposal of said lands, then the government can no more defeat his title thereto than can an individual. In the case last cited, however, such title had been procured by fraudulent means and, of course, the government had the right to set same aside upon a proper proceeding in the land department but, even if patent had been issued, the government would have had the same right, except that it would have been compelled to invoke the aid of another forum. (*Morton v. Nebraska,* 21 Wall. 88 U. S. 660; *United States v. Steenerson,* 1 C. C. A. 552, 50 Fed. 507.)

A number of decisions are also cited by said counsel in addition to *Barnard v. Boller, supra,* as supporting their contention, but a careful examination thereof discloses the fact that the question under consideration here was not involved or in any wise considered in said decisions;

but the judges rendering them, in passing upon the various questions involved therein, merely remark that lands taken by setlers as homestead claims do not become liable for any debts contracted prior to the issuance of the patent therefor. See *Woodruff v. Wallace*, 3 Okla. 355, where, in passing upon the question as to when the occupying claimant's act of this Territory becomes applicable to such lands, Chief Justice Dale, in part, says:

"To say that the courts of a state or territory may proceed to sell or dispose of land belongong to the United States, is to state a proposition which cannot be maintained. Neither can land acquired under the provisions of the homestead act be liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor. (Sec. 2296, R. S. U. S.) In short, it was the intention of congress to give to any qualified person a homestead free of all incumbrances, of any kind whatever, and which could not be sold for any debt which existed prior to the time of the issuance of the patent. Neither state nor territorial legislatures are permitted to pass laws interfering with the primary disposal of the soil. That right has remained in the congress of the United States. Did congress intend to change the rule in this respect by the passage of the law of June 1, 1874, *supra?* When we examine closely that act, it clearly appears that such was not the intention."

It will hardly be contended even by the most zealous advocate of the position taken by counsel for defendant in error that this court, by the language above quoted, intended to decide the proposition now under consideration.

The other cases so cited by counsel are the following: *State of Oregon v. O'Neal, supra; Sorrels v. Self, Adms'r,* 43 Ark. 451; *Miller v. Little,* 47 Cal. 348; *Paige v. Peters,* 70

16—

Wis. 178. 1, 35 N. W. 328; *Smith et al. v. Steele*, 13 Neb. 1, 12 N. W. 830; *Baldwin v. Boyd*, 18 Neb. 444, 25 N. W. 580; *Jean v. Dee*, [Wash.] 32 Pac. 460.

As showing more clearly that the proposition under discussion in the case at bar was not involved or considered in any of the cases just cited, we quote the following statements, as samples, from the decision in the case of *Sorrels v. Self*, *supra*, to-wit:

"No attempt is made by congress to control these lands, or put any condition on the state in reference to them, for any act done or debt contracted after title has passed from the United States. They simply assure the settler who enters on the land, in any event—whether the patent shall thereafter issue to him, his widow or his heirs—that the land and the fruits of his labor thereon shall not be subject to be taken for debts contracted while the title to the same was in the government.

"To deny to congress the power to make a valid and effective contract of this sort with the homestead claimant would materially abridge its power of disposal and seriously interfere with a favorite policy of government which fosters measures tending to a distribution of the lands to actual settlers at a nominal price."

It is not necessary that we pass upon any of the other errors assigned but, for the reasons stated in the second paragraph of this opinion, the judgment of the court below is reversed, at the cost of defendant in error, and the cause remanded with directions that the petition of plaintiff therein be dismissed and judgment entered for defendant, John J. Flanagan.

All the Justices concurring, except Tarsney, J., who dissents from both the reasoning and conclusion in the second paragraph of the opinion