HARRY W. LEMAN, TRUSTEE, APPELLANT, V. JESSE P. CHIPMAN ET AL., APPELLEES.

FILED OCTOBER 8, 1908. No. 15,270.

Creditors' Suit: TIMBER CULTURE LANDS: EXEMPTIONS. A judgment against a surety upon a supersedeas bond is a debt contracted at the date of the approval of such bond, within the meaning of that clause of the timber culture law which provides that land acquired under such law shall not in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the final certificate therefor.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. Affirmed.

*Benjamin F. Johnson,* for appellant.

*R. M. Proudfit* and *Hastings & Ireland, contra.*

CALKINS, C.

This is a creditor's suit to set aside a conveyance of an 80-acre tract of land made by the defendant Jesse P. Chipman to his wife, the defendant Mary L. Chipman, and to subject the same to the payment of a judgment against the first named defendant. The land was entered by Jesse P. Chipman under the provisions of the several acts of congress to encourage the growth of timber on the western prairies, commonly known as the "timber culture law." The final certificate was dated March 7, 1893. The plaintiff's judgment was recovered upon an appeal bond which Jesse P. Chipman signed as surety for one Morrissey to enable the latter to review in this court a judgment rendered against him in the district court. The bond was dated November 13, and approved November 16, 1891. There is no evidence as to the date upon which default in the condition of the bond occurred, but judgment was rendered thereon May 22, 1895. The bond having been signed prior to the issuance of the final certificate, the defendants pleaded that fact, and claimed that the land could not be held liable for the satisfaction of the plaintiff's judgment under the provision of the timber culture act, which provides: "That no land acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the final certificate therefor." Act March 3, 1891, 26 U. S. St. at Large, ch. 561, p. 1096. This defense was sustained by the court below, which rendered judgment for the defendant; and from this judgment the plaintiff appeals.

The plaintiff argues that the liability assumed by the signing of the bond was not at that time a debt, because it was not a direct promise for the payment of money, but

an undertaking to pay upon the contingency that the judgment against Morrissey should be affirmed, and that he should himself fail to discharge it. Blackstone (book 3, p. *154) defines the word "debt" as "a sum of money due by a certain and express agreement; as, by a bond for a determinate sum; a bill or note; a special bargain; or a rent reserved on a lease, where the quantity recoverable is fixed and specified, and does not depend upon any subsequent valuation to settle it." A debt, according to Webster, is "that which is due from one person to another, whether money, goods or services; that which one person is bound to pay another or to perform for his benefit; that for which payment is liable to be exacted; due; obligation; liability." It will thus be seen that the interpretation put upon the word varies from the narrow legal definition which distinguishes it from other contractual obligations, and liabilities growing out of torts, to the broad and comprehensive sense which includes all legal duty. The question here presented is whether in the statute referred to congress intended to use it in its narrow legal sense, or in its more popular and broader meaning of that which one person is bound by law to pay to, or to perform for, another. The provision we are considering was first inserted in the homestead law of 1862; and, when the timber culture law was enacted, the same provision was inserted therein, except that the period of contracting debts for the payment of which the land entered should be exempt ended under the timber culture law with the issue of the final certificate, and under the homestead law extended to the issuance of the patent. The reason for the provision was the same in both cases, and is easily discerned. Congress was about to prescribe conditions under which homes for the homeless might be secured upon the public domain. If they were granted under conditions which enabled creditors to seize the land as soon as title was granted by the government, it would offer no opportunity for those burdened with debts which they were unable to pay, a class which it was especially

desired to reach and benefit. That the land might not be taken from the entryman as soon as acquired, but that he might have a new start in life, was the object to be gained by this provision. There is no reason why the land so granted should not be taken for a debt arising upon an unconditional agreement to pay that does not apply to debts growing out of liabilities that were, when contracted, contingent; and, if a statute is to be construed with reference to the object to be attained, it would seem as if the broader signification should be given to the word under consideration.

The question whether this liability applies to wrongs has frequently been considered, and the weight of authority seems to be that the word debt in exemption statutes includes all kinds of claims, not only on contract, but also in torts. *Mertz v. Berry,* 101 Mich. 32, 24 L. R. A. 789; *Dellinger v. Tweed,* 66 N. Car 206; *State v. O'Neil,* 7 Or. 141; *Flanagan v. Forsythe,* 6 Okla. 225, 50 Pac. 152; *Warner v. Cammack,* 37 Ia. 642; *Conroy v. Sullivan,* 44 Ill. 451; *Loomis v. Gerson,* 62 Ill. 11; *Smith v. Omans,* 17 Wis. *395. This conclusion is vigorously assailed by Sanborn, C. J., in *Brun v. Mann,* 151 Fed. 145, where the opposing authorities are collected. It is there argued that there should be a marked distinction between the policy of releasing debtors from their honest obligations, and that of discharging them from liabilities for frauds and malicious injuries; but no such distinction exists between fixed and contingent liabilities, both arising out of contract. However, we do not need, and do not intend, to undertake to decide whether the language under consideration includes liabilities arising out of torts. We have already decided that liability of the signer of an appeal undertaking is, as between him and the judgment creditor, that of prinicipal debtor (*Flannagan v. Cleveland,* 44 Neb. 58) ; and we think a literal interpretation of the language used includes such liabilities as are sought to be enforced in this action. It is admitted by the plaintiff that the liability he is seeking to enforce is now a debt

within the meaning of that word contended for by him. To subject the land in question to the payment of his judgment is therefore to make it liable for the payment of a debt; and the sole remaining question is when was the debt contracted.

The verb "contract" means to make an agreement. The defendant Jesse P. Chipman signed the bond on the 13th day of November, 1891. When it was approved November 16, 1891, his promise had been given beyond his power to recall. After that date no act of his was performed, or necessary to be performed to fix his liability. Whatever difference there might be in opinion as to what the liability incurred by him should be called, there is no doubt about when it was contracted. We are therefore of the opinion that the case falls not only within the reason of the law, but within its very letter. The opinion was expressed by COBB, J., in *Smith v. Schmitz*, 10 Neb. 600, that the liability of a stockholder for the obligations of a corporation imposed for failure to give notice of its debts was contracted at the time the act was performed which made him a stockholder, although the case does not appear to have been disposed of solely upon that ground. The only case cited which is not in harmony with this view is that of *Leonard v. Ross*, 23 Kan. 292; but the argument in that case is vitiated by the false assumption that the word "contract," as used in the statute, has the same meaning as "accrue." The court say: "But we cannot give our assent to the doctrine that such debt accrued when said bond was executed. The claim evidently did not have any existence at that time, and probably did not have any existence for several months afterwards. A penal bond (such as a county treasurer's official bond is) does not of itself create a debt. * * * In our opinion, then, no debt accrued against Monger or his sureties until some breach of the official bond occurred. And an argument might even be made that no debt accrued against the surety Ross until judgment was rendered against him for the breach of the bond; but we have assumed other-

Leman v. Chipman.

wise, and probably correctly, that for the purposes of this case, and of this class of cases, the debt accrued when the breach of the bond occurred." There is no warrant for the use of the word "accrued" as synonymous with "contracted." Webster defines the word "accrued" as "(1) to increase; to augment; (2) to come to by way of increase; to arise or spring as a growth or result; to be added as increase, profit, or damage, especially as the produce of money lent." If the statute had provided that the land should not be subject to any debt which shall have accrued before the issue of the final certificate, the argument of this opinion would have been consistent and logical; but the word used in the statute is "contracted," which has an entirely different meaning. The assumption by the court that the two words have the same meaning destroys the value of its conclusion. The word "contract" cannot be used in the place of the word "accrue" in the opinion without a contradiction of terms. A reading of the opinion above quoted with the word "contracted" substituted where the word "accrued" occurs will demonstrate the extent of the error committed by the confusion of these two terms.

We are therefore of the opinion that the judgment of the district court was right, and recommend that it be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.