(January 15, 1916.)

## CHARLES F. RUDDY, Respondent, v. HERMAN J. ROSSI, Appellant.

### [154 Pac. 977.]

HOMESTEAD LAND — EXEMPTION FROM LIABILITY FOR DEBTS — FINAL PROOF AND CERTIFICATE — PATENT — SEC. 2296, REV. STATS., UNITED STATES.

1. Under sec. 2296, Rev. Stats. U. S. (U. S. Comp. Stats. 1901, p. 1398), relating to homesteads, and providing that no lands acquired under such section shall become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor, land so acquired is not liable for a debt contracted prior to the making of final proof and receiving final certificate entitling the entryman to a patent.

[As. to construction of federal statute exempting land acquired as homestead from liability for debt contracted prior to issue of patent, see note in Ann. Cas. 1912D, 282.]

2. *Held*, that, under section 2296, *supra*, where a debt was contracted after the issuance of a final certificate of entry to defendant, but prior to his obtaining a patent, the land might lawfully be taken in satisfaction of the debt, since the patent, when issued, relates back to the date of the final certificate.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. William W. Woods, Judge.

Action to perpetually enjoin the sale of land to satisfy judgment liens upon execution. Judgment for plaintiff. *Modified.*

J. A. Wayne and W. H. Hanson, for Appellant.

The right to a patent once vested is treated by the government, when dealing with the public domain, as equivalent to a patent issued. (*Budd v. Gallier,* 50 Or. 42, 89 Pac. 638; *Starks v. Starrs,* 6 Wall. (73 U. S.) 402, 18 L. ed. 925; *Flanagan v. Forsythe,* 6 Okl. 225, 50 Pac. 152, 155.)

And when the receiver's final receipt or certificate is issued to the entryman under the homestead statutes, such lands immediately become liable for the debts of the entryman contracted after the date of such final receipt. (*Leonard v. Ross,* 23 Kan. 292, *Kansas Lumber Co. v. Jones,* 32 Kan. 195, 4 Pac. 74; *Struby-Estabrook Mercantile Co. v. Davis,* 18 Colo. 93, 36 Am. St. 266, 31 Pac. 495; *Weare v. Johnson,* 20 Colo. 363, 38 Pac. 374; *Johnson v. Borin,* 7 Kan. App. 369, 54 Pac. 804; *Shelby v. Ziegler,* 22 Okl. 799, 98 Pac. 989; *Hobb v. J. I. Case Threshing Machine Co.,* 39 Okl. 383, 135 Pac. 395.)

A. H. Featherstone and Chas. E. Miller, for Respondent.

The doctrine of "relation" as applied to government patents for land is never invoked except where necessary to give effect to the intent of the statute or to cut off intervening claimants. (24 Am. & Eng. Ency. of Law, 128, 275, 277; *Demarest v. Wynkoop,* 3 Johns. Ch. (N. Y.) 139, 146, 8 Am. Dec. 467; *Barncord v. Kuhn,* 36 Pa. 383; *Stahl v. Lynn,* 86 Wis. 75, 56 N. W. 188; *K. C. Lumber Co. v. Moores,* 212 Fed. 153, 129 C. C. A. 1; *Johnston v. Jones,* 1 Black (66 U. S.), 210, 221, 17 L. ed. 117, 120; *Jackson v. Davenport,* 20 Johns. (N. Y.), 537; *Wood v. Ferguson's Lessee,* 7 Ohio St. 288, 291; *Gibson v. Chouteau,* 13 Wall. (80 U. S.) 92, 20 L. ed. 534; *Lessieur v. Price,* 12 How. (53 U. S.) 59, 74, 13 L. ed. 893, 899; *Wallowa Nat. Bank v. Riley,* 29 Or. 289, 54 Am. St. 794, 45 Pac. 766.)

Lands acquired under the federal homestead laws cannot in any event be subjected to the satisfaction of any debt contracted prior to the issuing of the patent therefor. (*Seymour v. Sanders,* 3 Dill. 437, Fed. Cas. No. 12,690; *Brun v. Mann,* 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A., N. S., 154; *In re Cohn,* 171 Fed. 568, 570; *In re Parmeter's Estate,* 211 Fed. 757; *Grames v. Consolidated Timber Co.,* 215 Fed. 785.)

This statute has been construed by the supreme courts of all of the public land states of the west, and with the exception of three, one of which is doubtful, they have unequivocally held that the statute means exactly what it says

and that the date of limitation is the date of the patent. (*In re Harris,* 16 Ariz. 1, 140 Pac. 825; *Gilkerson-Sloss Co. v. Forbes,* 54 Ark. 148, 26 Am. St. 29, 15 S. W. 191; *Barnard v. Boller,* 105 Cal. 214, 38 Pac. 728; *Klempp v. Northrop,* 137 Cal. 414, 70 Pac. 284; *Miller v. Little,* 47 Cal. 348; *Russell v. Lowth,* 21 Minn. 167, 18 Am. Rep. 389; *Dickerson v. Bridges,* 147 Mo. 235, 48 S. W. 825; *Brandhoefer v. Bain,* 45 Neb. 781, 64 N. W. 213; *Smith v. Schmitz,* 10 Neb. 600, 7 N. W. 329; *Leman v. Chipman,* 82 Neb. 392, 117 N. W. 885; *Faull v. Cooke,* 19 Or. 455, 20 Am. St. 836, 26 Pac. 662; *Schultz v. Levy,* 33 Or. 373, 54 Pac. 184; *Gould v. Tucker,* 20 S. D. 226, 105 N. W. 624; *Blair v. Mayer,* 24 S. D. 563, 140 Am. St. 797, 124 N. W. 721; *Van Doren v. Miller,* 14 S. D. 264, 85 N. W. 187; *Sprinkle v. West,* 62 Wash. 587, Ann. Cas. 1912D, 281, 114 Pac. 430, 34 L. R. A., N. S., 404; *Jean v. Dee,* 5 Wash. 580, 32 Pac. 460; *Gile v. Hallock,* 33 Wis. 523.)

BUDGE, J.—The respondent in this case filed a homestead entry on the northeast quarter of the northwest quarter, sec. 34, twp. 48 north, range 4 east, Boise Meridian, on August 6, 1903. Final proof was submitted by respondent in the local land office on October 4, 1909, and receiver's final receipt and certificate of entry acknowledging receipt of the purchase price of the land was issued November 12, 1909. The final patent to respondent for this land was not issued until August 26, 1912.

During the period between the date of the issuance of receiver's final receipt and the issuance of the patent itself, appellant advanced to respondent various sums of money. From the record it appears that there were also certain advances of moneys made to respondent prior to the issuance of the final receipt.

In September, 1912, appellant commenced suit in the district court of the first judicial district against respondent, to recover the amount due the former, which amount was subsequently split into two separate suits, one upon promissory notes given by respondent to appellant and the other upon an open account. On May 8, 1914, judgment by con-

fession for the sum of $931.87 was entered in favor of appellant in the action on the promissory notes; and on May 12, 1914, a jury in the suit on the open account rendered a verdict in favor of appellant for $2,115.48, and costs amounting to $19.05.

At the commencement of both of these actions attachments were levied upon the property heretofore described, and thereafter, in the month of June, 1914, executions were issued upon both of these judgments and levy of the same was made upon the land in question. Thereupon respondent commenced this action in the district court for the purpose of removing the cloud of these judgments, attachments and executions from this land.

In his complaint respondent alleges that he obtained patent for this land on August 26, 1912, and ever since said date has held the title thereto. Appellant, by his answer, admits the issuance of the patent on the date mentioned, but denies that the same was issued by virtue of the compliance by respondent with the homestead laws of the United States, and denies that respondent now holds the title thereto. Respondent then avers the rendition of the two judgments heretofore mentioned, and this allegation is admitted by the answer, as is also the allegation of the complaint that attachments were levied in these two suits upon the land of respondent. Respondent then alleges that each and every item of indebtedness going to make up the two judgments in question was contracted by him prior to the date of the issuance of the patent to said land; and that said land is, by the provisions of sec. 2296, Rev. Stats. of the United States, exempt from liability for the satisfaction of said judgments.

Sec. 2296, *supra*, provides: "No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

This action was submitted to the trial court on a stipulation of facts, upon which judgment was rendered in favor of respondent, from which judgment this appeal is prosecuted.

The only question decided by the trial court in this case was, Can land procured from the United States under the provisions of the homestead law be sold on execution for the payment of a debt contracted after final proof has been made, but before the issuance of the patent therefor? And this is the only question before us.

Respondent claims that the property was exempt from levy and sale by virtue of section 2296, *supra,* while appellant insists that the property is subject to levy and sale for debts contracted subsequent to the issuance of the final receipt, though prior to the issuance of the patent.

It is stipulated by counsel in paragraph 5 of their stipulation of facts that the notes on which the judgment of $931.87, including costs, was rendered, were all dated and the debts incurred prior to the date of the issuance of the receiver's receipt, to wit, prior to November 12, 1909. Counsel, by their own stipulation, have, therefore, eliminated from our consideration that judgment, by reason of the fact that it is conceded the indebtedness on which it was founded was incurred prior to the issuance of the final receipt. The trial court properly held that that judgment was not a cloud upon respondent's title to the land above described, and that the land was not subject to levy and sale under an execution thereon.

No indebtedness incurred prior to November 12, 1909, could become a lien against the land of respondent, having been contracted prior to the issuance of the final receipt. (*Leonard v. Ross,* 23 Kan. 292; *Kansas Lumber Co. v. Jones,* 32 Kan. 195, 4 Pac. 74.)

It is further stipulated by counsel that the items which make up the judgment for $2,115.48, all accrued between September 22, 1909, and August 9, 1912; while the bill of particulars shows that the first item of indebtedness upon which this judgment was based, accrued on January 3, 1910, and the last on August 9, 1912. These facts are, however, easily reconcilable, as the stipulation of facts contains a general statement of the dates between which the indebtedness accrued, and the bill of particulars shows the specific dates of

the items of indebtedness. It may, therefore, be properly conceded that all of the items of indebtedness on which this judgment was based were incurred subsequent to the date of the issuance of final receipt, but prior to the issuance of the patent to this land.

It is contended by respondent's counsel that lands to which title is acquired under the homestead laws of the United States are not liable for any debts of the entryman prior to the actual issuance of the patent itself. This contention is based on section 2296, U. S. Rev. Stats., heretofore quoted, and is supported by a number of decisions rendered by courts of recognized eminence. The state supreme courts before which this question has been brought are not, however, unanimous in opinion; some of them holding to the literal, technical construction of section 2296—that lands to which title is acquired under the homestead laws of the United States are not liable for any debts of the entryman prior to the *actual issuance of the patent itself;* while others equally reputable have held that such lands are liable for debts of the entryman contracted between the date of the issuance of the *receiver's final receipt or certificate* and the date of the issuance of the *patent.*

One of the early cases construing this section of the homestead law is found in *Leonard v. Ross,* 23 Kan. 292, in which opinion Justice Brewer (afterward one of the justices of the supreme court of the United States) fully concurred. The question involved in that case was whether a piece of land owned by Ross was exempt from execution held by Leonard, sheriff of Harvey county, Kansas. The facts of that case were, that on May 3, 1873, Ross entered his land under the homestead act of Congress. On October 25, 1873, he became surety on the official bond of Monger as treasurer of Harvey county. On May 19, 1874, he made his final proof, and paid his money for his land under the eighth section of said homestead act. At some time or times between November 5, 1872, and October 12, 1874, Monger and his sureties became liable on said official bond for breaches thereof. On December 15, 1874, Ross' patent for his land was issued to him. On

April 24, 1875, an action was brought by the commissioners of Harvey county against Monger and his sureties for said breaches of the bond. On December 27, 1876, a judgment was rendered against Monger and his sureties. Whereupon an execution was ordered and levied upon said land to satisfy said judgment. The question was: When did said land become subject to execution for debts? The court held that the land became subject to execution for debts subsequent to May 19, 1874, at the time when Ross made his final proof and payment, and based its conclusion upon the theory that Ross was entitled to his patent on May 19, 1874, and therefore his right must be determined as though the patent had in fact been issued on that date. That court said:

"The failure of the officers to issue the patent at the time that it ought to be issued, does not affect the rights of any person. The property becomes the purchaser's at the time he pays for it, with the bare naked legal title only remaining in the government. After Ross paid his money, he did not any longer hold his land under the provisions of the congressional homestead act. When he paid for his land, he thereby took it out of the further operation of said homestead act; . . . . That provision of said homestead act which refers 'to the issuing of the patent' has reference to that period of time when the patent ought to be issued, and not to the mere clerical work of issuing it."

That the issuance of the patent is purely a ministerial act, has been practically the universal holding of the courts. (*Blachley v. Coles,* 6 Colo. 349, 350; *Poire v. Wells,* 6 Colo. 406; *Steel v. St. Louis Smelting etc. Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226; *Heydenfeldt v. Daney Gold etc. Min. Co.,* 93 U. S. 634, 23 L. ed. 995.)

When the final receipt or certificate is issued to the homestead settler, the land becomes liable for the payment of debts contracted subsequent thereto, even though prior to the issuance of the patent. (*Hobb v. J. I. Case Threshing Mach. Co.,* 39 Okl. 383, 135 Pac. 395; *Struby-Estabrook Mercantile Co. v. Davis,* 18 Colo. 93, 36 Am. St. 266, 31 Pac. 495; *Budd v. Gallier,* 50 Or. 42, 89 Pac. 638; *Johnson v. Borin,* 7 Kan. App.

369, 54 Pac. 804; *Shelby v. Ziegler,* 22 Okl. 799, 98 Pac. 989; *Weare v. Johnson,* 20 Colo. 363, 38 Pac. 374.)

One of the principal cases relied upon by counsel for respondent to support their position is the case of *Barnard v. Boller,* 105 Cal. 214, 38 Pac. 728. That court places an exactly opposite construction upon section 2296 of the homestead act, *supra,* to that of the supreme courts of Oklahoma, Colorado and Kansas, and holds in effect that a homestead acquired pursuant to this homestead act is not liable to the satisfaction of any debt contracted prior to the issuance of the patent, and that no lands thus acquired can be taken in execution for any debt incurred after the issuance of a receiver's receipt entitling the homestead claimant to a patent and before the issuance of the patent. In this case the court said:

"The date of issuing the patent is made the point of time which divides the liability and nonliability of the land. It is this event or act which determines the question of liability, and not the title or the question of relation as applicable to the holder thereof which must be taken as the criterion.

"Congress has in plain and direct terms exempted the land from the debts of its owner or claimant contracted up to the happening of a specific event, viz., 'to the issuing of the patent therefor.'

"Had the statute provided that homesteads should not be liable for the debts of the patentees thereof contracted during their natural lives, or for ten years after the issuance of the patent, its constitutionality being conceded, the end of the life of the patentee or the expiration of the ten years would afford the test by which to measure the liability, and, in such a case, it is believed no just claim of liability could be maintained on account of debts contracted before the expiration of the time specified or event mentioned upon the ground that the patentee had previously held the title, legal or equitable.

"The provision of section 2296 is regarded as being equally explicit with the case supposed."

The supreme court of Oklahoma in the case of *Flanagan v. Forsythe,* 6 Okl. 225, 50 Pac. 152, in discussing the opinion of the supreme court of California just referred to, and in answer to the argument advanced, which it quotes at length, among other things, says: "We cannot agree with the reasoning just quoted, but believe it to be faulty in many respects. It does not give to the congressional enactment a reasonable interpretation, but assumes that that body intended thereby to arbitrarily fix the date of the performance of a mere clerical duty as the time when the homesteads might become liable for debts contracted by those who had entered them, instead of the time at which such entrymen had performed all of the requirements of the law on their part entitling them to such patents. The officers of the government whose duty it is to issue these patents might, on account of the accumulation of work, delay the issuance thereof for a period of five or even ten years after the entrymen had become entitled thereto; and yet, under the interpretation given the statute in question in the California case, the holder of the final or patent receipt could rest assured that the tract of land, of which he had, to all intents and purposes, become the owner, could not be held liable for any debts which he might contract; . . . . When an entryman complies with all of the requirements of the law, and acquires such title to the tract of land entered as a homestead as to enable him to dispose of same at will, and to require him to pay taxes thereon, we can see no reason why the exemption provided in said section of the Revised Statutes should still be held to apply thereto."

Counsel for respondent also cite and rely upon the case of *Wallowa Nat. Bank v. Riley,* 29 Or. 289, 54 Am. St. 794, 45 Pac. 766, wherein the court said: "So far as the question of title is concerned, this question may be conceded; but the vice of the position, as applied to the case before us, lies in the fact that we are not dealing with title, but with the question of exemption under a valid statute which declares, in plain and direct terms, that the land granted thereby shall not be liable for debts contracted prior to the happen-

ing of a specific event." Yet it is conceded by the great
weight of authority that when the homesteader has complied
with all of the provisions of the law for the disposition of
public lands; has paid the purchase price and received his
final receipt or certificate therefor; has done all that is re-
quired to vest the complete title in him, he thereby acquires
a title of which he cannot be deprived by the government
except for fraud or mistake. When he has complied with
these provisions and made final proof, he may sell the land
thus acquired, at his pleasure; he may create, by his volun-
tary act, a lien upon the same; and he may maintain an ac-
tion of ejectment to recover its possession. The land is then
liable to assessment for taxes and can be sold to satisfy a
tax lien; and there remains in the government only what by
some authorities has been defined to be the "naked legal
title." There is nothing remaining for the homestead entry-
man to do but wait for the final issuance of the patent, which,
when issued, simply furnishes evidence of ownership, and
relates back to the date of the issuance of the final receipt
or certificate.

We are, therefore, unable to recognize the doctrine so
earnestly contended for by counsel for respondent and sup-
ported by the case of *Wallowa Nat. Bank v. Riley, supra,*
which is the extension of exemption of a homestead entry-
man's land from execution beyond the issuance of the final
receipt, when he has by a full compliance with the provisions
of the congressional homestead act taken himself out of the
further operation thereof. In other words, when the United
States has parted with the title to the land, and the same has
vested in the homestead entryman, the authority by which
Congress may extend the provisions of exemption to his
land after he has title and before the issuance of the patent,
thereby dealing with the question of exemption which, in
our opinion, is exclusively within the jurisdiction of the
state and which is a personal right of the debtor that he may
waive or claim under the statutes of the respective states, is
not manifest to us. The application of this doctrine would

result in defeating the just claims of creditors, and it is a principle with which we are not in accord.

We are of the opinion that that provision of section 2296, *supra,* which refers to the issuance of the patent has reference to the period of time when the patent ought to be issued, and not to the mere clerical work of issuing it, and that said section no longer applies to homesteads after final proof has been made and receiver's final certificate has been issued therefor. This rule appears to us to be supported not only by reason but also by the weight of authority.

From the foregoing conclusions it follows that the trial court did not err in holding that the judgment for $931.87 in favor of appellant was not a lien or cloud upon the land described in respondent's complaint, but that the court did err in holding that the judgment in the sum of $2,115.48 was not a lien upon said land.

We therefore affirm the judgment of the trial court so far as it holds that the judgment for $931.87 is not a lien or cloud upon the title to the land described in respondent's complaint; and the cause is remanded to the trial court, with direction to modify its judgment to the extent that the judgment in the sum of $2,115.48, and costs amounting to $19.05, is a valid and subsisting lien upon the premises of respondent described in his complaint. Costs are awarded to appellant.

Morgan, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. The main question for determination in this case is whether the land acquired by a homesteader under the homestead laws of the United States is liable to seizure and sale for the satisfaction of a debt contracted after final proof has been made by the homesteader and before patent issues.

The decision of this question depends upon the proper construction of the provisions of sec. 2296, Rev. Stats. of the United States, which is as follows:

"No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor."

The chapter of the United States statutes in which said section is found includes the provisions enacted by Congress for the entry of homesteads on the public domain of the United States. By the federal constitution the Congress of the United States is expressly vested with the power of making all needful rules and regulations respecting the public domain, and may dispose of the public lands of the United States on such terms and conditions as in its judgment it may deem advisable; and one of the rules and regulations provided by Congress is that contained in said section 2296.

It seems to me that said section is so plain, clear, distinct and unambiguous in its language as not to require any construction whatever. The conditions and limitations placed upon the disposition of such lands must be derived from the language Congress has used in fixing or limiting such conditions, provided such language is plain and unambiguous. Courts cannot legislate conditions in or out of the grants which Congress has made of the public lands. It seems to me there is no room for judicial construction of said section.

That section prescribes one of the conditions upon which such lands should be conveyed to the homesteader, namely, upon the condition that the lands acquired under its provisions should not be liable for any debts contracted prior to the issuing of the patent therefor. It thus clearly and distinctly fixes the exact time at which exemptions shall cease and the conditions become ineffective, and that is when the patent shall issue.

The majority of the court construes the word "patent" in said section to mean "final certificate." Certainly if Congress had intended that the exemption there provided should cease when the final certificate or final receipt was issued, it would have used the words "final receipt" or "final certificate" instead of the word "patent." Is it too much to assume that Congress was familiar with the law it had enacted

for the disposition of the public lands; that it clearly understood the distinction between a final certificate and a patent?

It seems to me the majority has refused to give to the language used in said section its plain, natural and ordinary meaning, but has construed the word "patent" to mean "final certificate."

The opinion in the case of *Barnard v. Boller*, 105 Cal. 214, 38 Pac. 728, contains my views upon the question under consideration, and the proper construction of the provisions of said sec. 2296. That case refutes the application of the doctrine of relation in such a case as the one at bar, and holds that under the provisions of said section the condition or circumstance of the equitable title is not made the criterion of liability for antecedent debts. That section clearly provides that the land shall not in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor. The date of the issuing of the patent is made the point of time which divides the liability from the nonliability of the land. It is this event or act which determines the question of liability and not the title or the question of relation as applicable to the holder thereof which must be taken as a criterion, and in the last cited case it is stated: "Congress has in plain and direct terms exempted the land from the debts of its owner or claimant contracted up to the happening of a specific event, viz., 'to the issuing of the patent therefor.'"

The majority quotes from *Flanagan v. Forsythe*, 6 Okl. 225, 50 Pac. 152. I am unable to agree with the reasoning in that case, and believe it to be faulty in many respects and that it utterly fails to properly construe said sec. 2296. In that case Mr. Justice Tarsney filed a dissenting opinion which, in my view of the matter, utterly demolishes the arguments and reasoning used by the majority in that case.

The supreme courts of Kansas, Oklahoma and Colorado hold that the homestead is liable for the debts incurred after the issuance of final receipt and before the issuance of the patent, while Arizona, Arkansas, California, Minnesota, Missouri, Nebraska, Oregon, South Dakota, Washington and

Wisconsin all hold that said sec. 2296 means just what it says, and that the homestead entry is not liable for the payment of the debts of the homesteader contracted prior to the issuance of the *patent.*

The United States court has construed said sec. 2296, and in *In re Cohn,* 171 Fed. 568, 570, referring to said section, the court said: "It is the issuance of the patent which fixes the time when the property shall become liable to subsequent debts of the homesteader."

In *Grames v. Consolidated Timber Co.,* 215 Fed. 785, the court, speaking through Wolverton, District Judge, after quoting said sec. 2296, said:

"This provision has received a literal construction, and comprises any debt accruing or existing prior to the date of the issuance of the patent, and, although in some cases affecting the title to the homestead, where the issuance has relation back to the issuance of the final certificate, the clause can bear no such interpretation, as it applies to the exemption designed for the benefit of the homesteader."

See, also, *Seymour v. Sanders,* decided by Dillon, Circuit Judge, 3 Dill. 437, Fed. Cas. No. 12,690.

Not a single federal case has been called to my attention where the construction of said sec. 2296 was involved, where the federal courts have not held that the issuance of the patent is the date fixed when the land of the homesteader shall become liable for his subsequent debts, and not one of them holds that the land becomes liable for such debts upon the issuance of the receiver's final certificate.

The judgment of the trial court ought to be affirmed.

Petition for rehearing denied.