JOHN HUNT, APPELLANT, V. JOHN HUFFMAN ET AL.,
APPELLEES.

FILED JUNE 26, 1894.  NO. 5178.

**Review.** This case presents no question of law, and the decree of the lower court being supported by sufficient testimony, is affirmed.

APPEAL from the district court of Merrick county. Heard below before MILLER, J.

*A. Ewing* and *John Patterson*, for appellant.

*G. W. Bemis* and *J. W. Sparks*, contra.

NORVAL, C. J.

This is a creditor's bill brought by John Hunt against John Huffman and others to set aside and cancel certain conveyances covering a half section of land in Merrick county, and to subject said real estate to the payment of plaintiff's judgment. From a decree in favor of the defendants plaintiff prosecutes an appeal.

The defendants John Huffman and Joanna Huffman are husband and wife, and the defendants Josiah Huffman and Allen Huffman are their children. On and prior to the 11th day of August, 1879, plaintiff and the Huffmans were residents of the state of Pennsylvania, and on said date plaintiff and said John Huffman executed and delivered to one Israel White their promissory note for the sum of $1,113.50, bearing interest at six per cent, plaintiff signing the same as surety merely for said Huffman. The note not having been paid at maturity, suit was brought thereon in the court of common pleas in and for Green county, in the state of Pennsylvania, where judgment was rendered for the full amount of the note against said Huffman and

the plaintiff herein on the 7th day of March, 1885.   Subsequently John Hunt, the surety, in order to prevent the sale of his property, was compelled to, and did, pay said judgment, interest, and costs.   In the spring of 1885 the Huffmans moved to Nebraska, locating in Merrick county. On the 14th day of May, 1888, said Hunt commenced an action in the district court of said last named county against John Huffman to recover the amount he was compelled to pay for the latter to satisfy the said judgment in favor of said White.   On the 24th day of October, 1888, a trial was had in said court, which resulted in Hunt's obtaining a judgment against said John Huffman for the sum of $1,540 and the costs of suit.   This judgment remains in full force and effect, and unpaid.   Execution was issued on said judgment, which, for want of goods and chattels and lands and tenements of the said Huffman whereon to levy, was returned by the sheriff wholly unsatisfied, the defendant then being, and for several years prior thereto was, and now is, wholly insolvent.   It appears that said John Huffman, at the time plaintiff signed said note as surety, and from thence to the 31st day of January, 1885, was the owner of about 271 acres of real estate situtated in Green county, Pennsylvania, of the value of about $18,000, which was heavily incumbered by mortgage and other liens.   D. A. Spragg, Dr. Braden, and a number of other residents of Green county were the owners of a half section of land near Central City, in Merrick county, this state, described as the south half of section 31, in township 14 north, of range 6 west, containing 312 acres.   In December, 1884, and January, 1885, negotiations were pending between the several owners of this half section and John Huffman for the exchange of the above tracts of land, and with that end in view said Huffman came to Nebraska in the said month of December for the purpose of examining the Merrick county land.   He was accompanied by Dr. Braden, and, after looking the premises over, they both re-

turned to Green county, Pennsylvania. The record further discloses that on the 31st day of January, 1885, John Huffman conveyed, his wife joining in the deed, his farm of 271 acres to D. A. Spragg, who received the title in trust for the several persons, or syndicate, who owned the above half section, and at the same time a contract was entered into by the members of said syndicate whereby they agreed to convey the said Merrick county lands to Joanna Huffman. Subsequently, on the 31st day of January, 1886, the several owners conveyed said half section to said Joanna, which deed was duly recorded in Merrick county April 16, 1886. On the 18th day of May, 1888, said Joanna conveyed to her son Josiah 100 acres of said half section, and on the same day she conveyed to her other son, Allen, another 100 acres of said land. On the 25th day of October, 1888, said Joanna deeded another 100 acres of said half section to one Isaac B. Traver, one of the defendants herein. The defendant John Huffman joined with his wife in each of the last three deeds mentioned. Since the commencement of this suit Allen Huffman has deeded the 100 acres, so as aforesaid conveyed to him, to his brother Josiah. On May 6, 1886, Joanna executed a mortgage to the Equitable Trust Company on the entire half section to secure the sum of $2,500. The appellant's contention is that John Huffman exchanged his 271 acres of land in Green county for the above described half section, and that the title to the latter tract was taken in the name of his wife, Joanna, for the purpose of cheating and defrauding appellant and to hinder and delay him in the collection of his aforesaid claim against John Huffman, and that the other deeds upon the different portions of the Merrick county land were likewise made for the same fraudulent purpose. The appellees insist that there was no exchange of land, but that the transfer of the half sections and the conveyance of John Huffman's farm were separate and distinct transactions, and in no manner connected the one with the other.

In addition to the facts already detailed, which are undisputed, it is also established beyond question, by the testimony of numerous disinterested witnesses, that John Huffman had declared on different occasions prior to his removal to this state that he never intended to pay the plaintiff, for the alleged reason that said debt was not an honest one, and thus far, in that respect at least, he has faithfully kept his word; that shortly after the conveyance of the farm, John Huffman caused his household goods, farming implements, and considerable other personal property, aggregating in value more than $1,000, to be sold at auction, the same being advertised in the name of, and the sale conducted by, his son Josiah. The sale notes were taken in Josiah's name. Plaintiff introduced testimony to show that John Huffman had considerable stock on his farm, and just before said public sale, from twenty to thirty head of cattle, which he then had upon his place, were shipped to this state in the name of D. A. Spragg, and they were placed and left by John Huffman upon the said half section; that said Huffman traded this 271 acres for the half section, the agreed price of the former being $65 per acre, less liens and incumbrances thereon, amounting to $11,000 or $12,000, which the purchaser was to and did pay; that the Nebraska land was taken in the deal at $20 per acre, and that said Huffman has stated that he made the exchange, likewise that he shipped his cattle to Nebraska, although he now insists, and so testified on the trial, that he sold them to Spragg before they were brought to this state. The evidence on behalf of the plaintiff, if believed, is sufficient to establish that the greater part, if not the entire, consideration for the lands in dispute were deducted from the equity which John Huffman had in the Pennsylvania lands, and that the title to the Nebraska tract was taken in the name of Mrs. Huffman for the sole purpose, and with the intent, of defrauding this plaintiff.

The evidence on behalf of the defendants show the

transaction in altogether a different light. John Huffman testified that he came to this state with Dr. Braden to look at the half section with the view of trading his farm therefor, but after his return to Pennsylvania he made a computation of the amount of liens against his farm, and his unsecured debts, when for the first time he ascertained that his entire indebtedness equaled the value of his farm, and he then abandoned all idea of a trade; that he sold his place at $65 per acre; that not a dollar of the purchase money was received by him, nor went to pay for the land in dispute, but that the whole consideration for his place was, under his direction, applied by Spragg in lifting the liens upon the land and paying the unsecured *bona fide* debts of Huffman. The witness in his testimony gives in detail the names of the persons to whom Spragg paid the money and the amount received by each, the aggregate of which sums equals, if not exceeds, the contract price at which his land was sold. Mr. Huffman further testified that he borrowed money with which to come to Nebraska, and Mr. Spragg corroborates him on this point; that Mrs. Huffman entered into a written contract for the purchase of the half section at $20 per acre, and paid down of her own moneys $1,000, and turned in a $1,500 note given by John Huffman to his son Josiah for several years' wages, it being agreed between the mother and the son that when she obtained title to the land she was to convey to the latter 100 acres of the tract; that the deed was not made to Mrs. Huffman for the half section at the time of the purchase, for the reason that she did not have the means with which to pay the balance of the consideration; that Mrs Huffman borrowed in November, 1885, from her brother, B. K. Harrington, $1,500, which was paid on the land, and subsequently she paid the remainder of the purchase money by borrowing $2,500, and executing a mortgage on the half section to secure the payment thereof; that the deed to her was delivered at the time of the execution of the mort-

gage, and that the amount of the $1,500 note given by the witness to Josiah Huffman was deducted from the price of the Pennsylvania land. Mrs. Huffman's testimony, in most respects, corroborates her husband; so does that given by Josiah Huffman, and also the testimony by deposition of D. A. Spragg, taken by plaintiff. The uncontradicted evidence is to the effect that Traver purchased in good faith of Mrs. Huffman 100 acres of the land and paid her therefor $2,500, out of which she repaid the $1,500 loan obtained from her brother, and the remainder was applied in making improvements on the land remaining unsold; that the consideration for the conveyance made to Josiah was the $1,500 note he let his mother have, and the assuming of $500 of the $2,500 mortgage upon the half section; and Allen Huffman, as consideration for the 100 acres conveyed to him, assumed the remaining $2,000 of said mortgage.

From the foregoing synopsis of the testimony it will be observed that while the court below would have been justified in entering a decree for the plaintiff, it cannot be said that the findings and decree actually pronounced are manifestly wrong, or against the clear weight of the evidence. It is true that John Huffman, out of the proceeds arising from the sale of his farm, paid what he owed his son for wages, as well as all his other debts then owing, instead of paying the plaintiff; but that did not make the transaction fraudulent. A debtor has a perfect right, in good faith, either to pay or secure one creditor in preference to another. The decree being supported by sufficient evidence, under the uniform decisions of this court it should not be disturbed, even though we might have reached a different conclusion, upon the evidence, from that adopted by the trial judge, had we presided in his stead. The decree is

AFFIRMED.