THE HON. CHARLES H. COOPER,
THE HON. WILLIAM L. HOLLOWAY,
THE HON. ALBERT J. GALEN, } Associate Justices.
THE HON. ALBERT P. STARK,

---

FIRST STATE BANK OF PHILIPSBURG, RESPONDENT, *v.*
DURAND ET AL., APPELLANT.

(No. 5,340.)

(Submitted November 15, 1923. Decided December 8, 1923.)

[222 Pac. 434.]

*Public Lands—Homesteads—Mortgaging Before Patent—Federal Statutes—Interpretation—Decisions of Land Department Entitled to Consideration.*

Homesteads—Entryman may Mortgage in Advance of Patent.
  1.  Though land embraced in a homestead entry, under section 2296, United States Revised Statutes, may not be subjected to an involuntary lien by a creditor for a debt contracted before issuance

---

1.  Validity of mortgage on public lands executed by claimant under homestead acts prior to patent or final proof, see notes in 6 **L. R. A.** (n. s.) 934; **L. R. A.** 1918B, 681.
  Enlarged homestead acts, see note in 8 **A. L. R.** 635.

[69 Mont. 184.]

of patent, a mortgage thereon given in good faith by the entryman in advance of patent is valid.

Federal Statutes—Interpretation—Decisions of Federal Land Department Entitled to Consideration.

2. While the decisions of the United States Land Department are not controlling upon the courts in the interpretation of federal statutes, the practical administration of them by its officers is entitled to respectful consideration.

*Appeal from District Court, Granite County; Geo. B. Winston, Judge.*

Action by the First State Bank of Philipsburg against Frank Durand and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Wingfield L. Brown* and *R. Lewis Brown,* for Appellant, submitted a brief; *Mr. Wingfield L. Brown* argued the cause orally.

Since the decision by the supreme court of the United States in *Ruddy* v. *Rossi,* 248 U. S. 104, 63 L. Ed. 148, 39 Sup. Ct. Rep. 46, 8 A. L. R. 843, it can no longer be questioned that homestead lands cannot be so encumbered by mortgage prior to the issuance of patent as to make them liable for a debt contracted prior to that date. (See, also, *Webster* v. *Bowman,* 25 Fed. 889; *Smart* v. *Kennedy,* 123 Ala. 627, 26 South. 198; *Hale* v. *McGraw,* 201 Ala. 358, 78 South. 215; *Miller* v. *Ammon,* 145 U. S. 434, 36 L. Ed. 759, 12 Sup. Ct. Rep. 884 [see, also, Rose's U. S. Notes]; *Williams* v. *Sherman,* 36 Idaho, 494, 212 Pac. 971, 974.)

*Mr. R. E. McHugh,* for Respondent, submitted a brief and argued the cause orally.

While the courts have not always been harmonious in their views of the question involved in this case, some holding that a mortgage given while title to the land was still in the United States was void, still the great weight of opinion is to the contrary and it now must be accepted as definitely settled that a mortgage or deed of trust given by one seeking or holding an entry under the homestead laws of the United States,

prior to the perfection of his equitable title, is valid. (*Fuller*
v. *Hunt,* 48 Iowa, 163; *Kirkaldie* v. *Larrabee,* 31 Cal. 455, 89
Am. Dec. 205; *Weber* v. *Laidler,* 26 Wash. 144, 90 Am. St. Rep.
726, 66 Pac. 400; *Worthington* v. *Tipton,* 24 N. M. 89, 172 Pac.
1048; *Guaranty Savings Bank* v. *Bladow,* 176 U. S. 448, 44
L. Ed. 542, 20 Sup. Ct. Rep. 425 [see, also, Rose's U. S. Notes];
*Hafemann* v. *Gross,* 199 U. S. 342, 50 L. Ed. 220, 26 Sup. Ct.
Rep. 80; *Norris* v. *Heald,* 12 Mont. 282, 33 Am. St. Rep. 581, 29
Pac. 1121; *Selway* v. *Daut,* 67 Mont. 262, 215 Pac. 646; 22
R. C. L., sec. 74, p. 325.)

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought by the plaintiff bank to foreclose
two mortgages executed by Frank Durand and Arthur Durand,
respectively, on lands embracing their respective homestead
entries, situate in Granite county, given to secure the joint
note of Frank Durand, Arthur Durand and Oscar Durand in
the sum of $8,000. In their separate answers Arthur Durand
and Frank Durand admitted the execution of the note and the
mortgages, but each pleaded his discharge in bankruptcy as a
bar to the action. Oscar Durand admitted the signing of the
note, but likewise pleaded his discharge in bankruptcy. Frank
and Arthur Durand affirmatively alleged that the debt created
by the note and mortgage was contracted prior to the making
of final proof upon their respective homesteads, and that the
mortgages were void under the provisions of section 2296 of the
United States Revised Statutes (U. S. Comp. Stats., sec. 4551).
The district court rendered judgment foreclosing the mortgages
of Frank and Arthur Durand, and absolved all three of the
defendants from personal liability for any deficiency which a
sale of the mortgaged property should fail to satisfy.

In an agreed statement the following facts were stipulated:
That because of their discharge in bankruptcy no deficiency
judgment could be lawfully entered against either one of the
three defendants; that the lands mortgaged by Arthur Durand
embraced his homestead; that he made final proof thereon

October 18, 1920, received final certificate, and patent was issued to him November 10, 1921. By the same stipulation it was agreed that Frank Durand made final proof on October 18, 1920, received final certificate, and that patent was issued to him December 22, 1921. It was also agreed that the three Durands were copartners engaged in farming and stock-raising in Granite county; that $4,000 of the $8,000 included in the note was used by the partnership in making payment for the purchase of real estate adjacent to their homestead, and that the other $4,000 was used to purchase stock cattle for the partnership, and that none of it was borrowed for the purpose of enabling either Frank Durand or Arthur Durand to secure patents to their homesteads; that when the mortgage was executed by Arthur Durand he had not proceeded far enough to entitle him to final certificate under the rules and regulations of the Land Department or under the laws of the United States, nor was Frank Durand entitled to final certificate at the time he executed and delivered his mortgage to the plaintiff; that, when Frank Durand signed the mortgage covering his homestead, Arthur Durand was a member of the American Expeditionary Forces in France; that upon his return to the United States the latter signed the note and executed the mortgage upon his homestead; that the note was a joint obligation of the partnership and *bona fide*. The appeal is from the judgment.

The only question argued by counsel necessary to a decision [1] in this case is this: Can the lands covered by the mortgages of Frank and Arthur Durand be subjected to the payment of the note, and the mortgages foreclosed? This question has been decided adversely to counsel's contention by the Land Department of the United States many times. The point was exhaustively discussed by Mr. Finney, First Assistant Secretary of the Interior, in 48 Land Dec., at page 583. He says: "All the decisions of the department since the incumbency of Secretary Teller have been to the effect that such mortgage or deed of trust is not an alienation within the scope

of the homestead statute, or forbidden by the spirit of the law. (*Larson* v. *Weisbecker,* 1 L. D. 409; *Mudgett* v. *Dubuque & Sioux City R. R. Co.,* 8 L. D. 243; *Kezar* v. *Horde,* 27 L. D. 148.)    It is true that the case of *Larson* v. *Weisbecker, supra,* decided by Secretary Teller, arose under the pre-emption law and involved the construction of section 2262, Revised Statutes; but the spirit and intent of the pre-emption and homestead laws in this respect are the same, and section 2290, Revised Statutes, as amended by section 5 of the Act of March 3, 1891 (26 Stat. 1095), was made substantially to conform to the language of section 2262.''    The courts of many of the states have reached the same conclusion, as will be seen by the cases cited in the opinion in the above case and hereinafter.    But for the earnest insistence of appellants' counsel that the late decision in *Ruddy* v. *Rossi,* 248 U. S. 104, 63 L. Ed. 148, 8 A. L. R. 843, 39 Sup. Ct. Rep. 46, had turned the current of opinion and overruled all former holdings of the courts and of the Land Department, the question now presented would have been regarded as settled, at least until the supreme court of the United States makes a contrary ruling.

The facts in the *Ruddy Case,* as stated in the opinion, were these:    Ruddy made preliminary homestead entry of designated land within the state of Idaho, August 6, 1903, submitted final proof October 4, 1909, and obtained final certificate November 12, 1909, and patent August 26, 1912.    In 1914 two judgments were obtained against him—the first upon indebtedness incurred prior to November 12, 1909; the second upon debts contracted subsequent to that date and prior to patent. Executions were issued and levied upon the homestead; and thereupon the proceeding under review was begun to declare the asserted liens invalid and a cloud upon the title. The Idaho court held the first judgment unenforceable against the land, since it represented indebtedness which had accrued prior to final entry.    It further held the second judgment could be enforced, as it was based upon debts contracted after final entry, at which time the homesteader became legally en-

titled to his patent. A reference to the case as it is reported in 28 Idaho, at page 376, 154 Pac. 977, discloses that before final receipt was issued, and also between the date of its issuance and the receipt of the patent itself, Rossi advanced to Ruddy, the homesteader, various sums of money. In two actions, one upon a promissory note, and the other upon an open account, he secured judgments. The homestead was attached before judgment, and an execution after entry of judgment levied upon it. The action appealed to the United States supreme court was brought by Ruddy to remove the cloud created by the judgments in the two cases and the levy of the attachments and executions. The question answered by the court was this: "Did Congress have power to restrict alienation of homestead lands after conveyance by the United States in fee simple?" Section 2296 (U. S. Comp. Stats., sec. 4551) reads as follows: "No lands acquired under the provisions of this Act shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor." After referring to former decisions of that court, the opinion concludes: "Acting within its discretion, Congress determined that, in order promptly to dispose of public lands and bring about their permanent occupation and development, it was proper to create the designated exemption; and we are unable to say that the conclusion was ill founded, or that the means were either prohibited or not appropriate to the adequate performance of the high duties which the legislature owed to the public." The judgment of the supreme court of Idaho was reversed, upon the ground that the statute applied as well to debts contracted after final entry and before patent as to debts contracted before final proof, and that the statute was constitutional. The case was not one to test the validity of a mortgage given upon a homestead which had not yet ripened into patent—a voluntary transaction founded upon even-handed dealings between the homesteader and the mortgagee, as in the present case. Counsel is therefore wrong in thinking that the decision impinges in the

least upon the consistent holdings of the Land Department of the government or of the courts.

This interpretation was given the section in *First State Bank of Shelby* v. *Bottineau County Bank*, 56 Mont. 363, 8 A. L. R. 631, 185 Pac. 162, and *Mettler* v. *Rocky Mountain Security Co.*, 68 Mont. 406, 219 Pac. 243. The first case was brought by the grantee of the entryman after receipt of patent, to restrain the judgment creditor and the sheriff from selling the homestead under a judgment for the recovery of debts due the judgment debtor before the issuance of patent. In the latter case, Mrs. Mettler brought the action to quiet title to a homestead of which she was the grantee after patent issued, and to secure an injunction restraining the defendant sheriff from issuing a deed to the holder of the certificate of sale under a judgment secured against the entryman for debts incurred prior to patent. "Section 2296 means," says Mr. Justice Holloway, "that a creditor cannot by any possible means acquire an involuntary lien upon the land embraced in a homestead entry to secure satisfaction of a debt contracted before patent issues (*Gilkerson-Sloss Co.* v. *Forbes,* 54 Ark. 148, 26 Am. St. Rep. 29, 15 S. W. 191; *Ash* v. *Eriksson,* 115 Minn. 478, 132 N. W. 997); and the reason is that by the terms of the grant the Congress has placed the land beyond the reach of any legal process which might be issued for such purpose." To put it in another way, the statute was intended to render the homestead immune from legal process in the enforcement of all involuntary liens created before the issuance of patent.

There is nothing in the language of the section evincing an intention to prohibit the entryman from creatng an equitable lien upon his homestead by his own voluntary, honest act. This view has been expressed in many decisions of state courts involving the right of the entryman to mortgage his homestead in advance of patent, as security for a *bona fide* debt, where he has not attempted to circumvent the purpose of Congress in preventing the acquisition of the public lands by means of

fraud and speculation. (*Stark* v. *Duvall,* 7. Okl. 213, 54 Pac. 453; *Stark* v. *Morgan,* 73 Kan. 453, 9 Ann. Cas. 930, 6 L. R. A. (n. s.) 934, 85 Pac. 567; *Klempp* v. *Northrop,* 137 Cal. 414, 70 Pac. 284; *Pittsburg Mortgage Investment Co.* v. *Sneed,* 60 Okl. 98, 159 Pac. 515.) As stated by Mr. Justice Brewer in a case involving the right to mortgage a homestead before patent: "The limitation was on the *creditor,* and not upon the debtor. While the land might not be taken from him against his will, for the satisfaction of past indebtedness, yet he was not prohibited from appropriating it, if he desired, therefor. He might convey it as freely as any other land, and for such consideration as satisfied him." (*Watson* v. *Voorhees,* 14 Kan. 328.)

While it may be true that the decisions of the Land Depart- [2] ment of the United States do not control the courts in the interpretation of the federal statutes, the practical administration of them adopted by its officers is entitled to respectful consideration. This annunciation was made in *Montana Manganese Co.* v. *Ringeling,* 65 Mont. 249, 211 Pac. 333. It has been repeated on numerous occasions by the United States supreme court. (*Webster* v. *Luther,* 163 U. S. 331, 41 L. Ed. 179, 16 Sup. Ct. Rep. 963; *Brown* v. *United States,* 113 U. S. 571, 28 L. Ed. 1079, 5 Sup. Ct. Rep. 648; *United States* v. *Hammer,* 221 U. S. 220, 55 L. Ed. 710, 31 Sup. Ct. Rep. 593; *Logan* v. *Davis,* 233 U. S. 613, 58 L. Ed. 1121, 34 Sup. Ct. Rep. 685; *La Roque* v. *United States,* 239 U. S. 62, 60 L. Ed. 147, 36 Sup. Ct. Rep. 22 [see, also, Rose's U. S. Notes]; *McLaren* v. *Fleischer,* 256 U. S. 477, 65 L. Ed. 1175, 41 Sup. Ct. Rep. 577.) In the case first cited Mr. Justice Harlan, speaking for the court, uses this language: "The practical construction given to an Act of Congress, fairly susceptible of different constructions, by one of the executive departments of the government, is always entitled to the highest respect, * * * especially when important interests have grown up under the practice adopted. (*Bate Refrigerating Co.* v. *Sulzberger,* 157

U. S. 1, 34, 39 L. Ed. 601, 15 Sup. Ct. Rep. 508; *United States* v. *Healey,* 160 U. S. 136, 40 L. Ed. 369, 16 Sup. Ct. Rep. 247 [see, also, Rose's U. S. Notes].)''

In *McLaren* v. *Fleischer, supra,* the Act of May 14, 1880, Chapter 89, 21 Stat. 140 (U. S. Comp. Stats, §§ 4536–4538), being open to two constructions, the practical interpretation of the Land Department was recognized, the court saying: ''In the practical administration of the Act, the officers of the Land Department have adopted and given effect to the latter view. They adopted it before the present controversy arose, or was thought of, and, except for a departure soon reconsidered and corrected, they have adhered to and followed it ever since. Many outstanding titles are based upon it, and much can be said in support of it. If not the only reasonable construction of the Act, it is at least an admissible one. It therefore comes within the rule that the practical construction given to an Act of Congress, fairly susceptible of different constructions, by those charged with the duty of executing it, is entitled to great respect, and, if acted upon for a number of years, will not be disturbed, except for cogent reasons.''

                                                    *Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

Rehearing denied January 30, 1924.

Case taken to supreme court of the United States on writ of error, February 27, 1924.