(July 3, 1925.)

## WALLACE BASHORE, Respondent, v. M. L. ADOLF, L. K. ADOLF and A. B. MULHALL, Appellants.

[238 Pac. 534.]

COURTS—JUDICIAL OPINIONS—CONSTRUCTION—PUBLIC LANDS OF UNITED STATES — HOMESTEAD ENTRIES — MORTGAGES GIVEN BEFORE PATENT—VALID AS BETWEEN PARTIES.

1. Judicial opinions are authoritative only on the facts on which they are founded, and general expressions must be considered and construed in the light of this rule.

2. A mortgage given in good faith, by one who has made homestead entry on the public lands of the United States, prior to the issuance of his final receipt or patent, is valid as between the parties to the mortgage after the patent has been issued.

APPEAL from the District Court of the Ninth Judicial District, for Jefferson County. Hon. James G. Gwinn, Judge.

Action to quiet title and cancel certain mortgages. Judgment for plaintiff. *Reversed.*

Maurice M. Myers, for Appellants.

A mortgage given in good faith by one who has made homestead entry on the public lands of the United States prior to the issuance of his final receipt or patent is good as between the parties to the mortgage after the patent has issued. (*Stark v. Morgan,* 73 Kan. 453, 9 Ann. Cas. 930, 85 Pac. 567, 6 L. R. A., N. S., 934; *Lohman State Bank v. Grim,* 69 Mont. 444, 222 Pac. 1052; *Thomas v. Wisner,* 66 Colo. 243, 180 Pac. 744; *Worthington v. Tipton,* 24 N. M.

Publisher's Note.

1. What constitutes *dictum,* see note in Ann. Cas. 1912C, 1248.

2. Validity of mortgage on federal homestead entry prior to final proof, see note in 9 Ann. Cas. 934.

Encumbrances by pre-emptors and other claimants of government land, see note in 52 Am. St. 249.

89, 172 Pac. 1048; *Roberts v. Hudson,* 25 Wyo. 505, 173 Pac. 786; *Pittsburg Mtg. Inv. Co. v. Sneed,* 60 Okl. 98, 159 Pac. 515; *Stark v. Duvall,* 7 Okl. 213, 54 Pac. 453; *Klempp v. Northrop,* 137 Cal. 414, 70 Pac. 284; *Howard v. Reckling,* 31 Or. 161, 49 Pac. 961; *Weber v. Laidler,* 26 Wash. 144, 66 Pac. 400; *Stewart v. Powers,* 98 Cal. 514, 33 Pac. 486; *Runyan v. Snyder,* 45 Colo. 156, 100 Pac. 420; *McFall v. Murray,* 4 Kan. App. 554, 45 Pac. 1100; *Orr v. Ulyatt,* 23 Nev. 134, 43 Pac. 916; *Fariss v. Deming Inv. Co.,* 5 Okl. 496, 49 Pac. 926; *Rogers v. Minneapolis Thresh. Mach. Co.,* 48 Wash. 19, 92 Pac. 774, 95 Pac. 1014; *Fuller v. Hunt,* 48 Iowa, 163; *Lang v. Morey,* 40 Minn. 396, 12 Am. St. 748, 42 N. W. 88; *Forgy v. Merryman,* 14 Neb. 513, 16 N. W. 836; *Spiess v. Neuberg,* 71 Wis. 279, 5 Am. St. 211, 37 N. W. 417.)

W. A. Beakley, for Respondent.

It is agreed in this case that no patent had issued, no final receipt had been received and no final proof submitted, and that the mortgages were all contracted before any final receipt was issued. The case of *Ruddy v. Rossi,* 248 U. S. 104, 39 Sup. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843, is conclusive, for there can be no mistaking the language of the United States supreme court in that decision, and which decision was followed in the same case by this court when the case was remanded in *Ruddy v. Rossi,* 28 Ida. 376, 154 Pac. 977.

Ray Agee, *Amicus Curiae.*

Mortgages given upon government homesteads prior to the issuance of patent are a subsisting and valid lien upon all the right, title and interest of the mortgagors in and to the homestead, and when patent finally issues, such mortgages are a valid and subsisting lien upon all the right, title, estate and interest which the mortgagor acquires therein by virtue of such patent, and the lien of the mortgage attaches as of the date of such mortgage. (32 Cyc. 1084, par. D; 1 Jones on Mortgages, 7th ed., par. 177, p. 256; 22 R. C. L., p.

325, par. 74; *Stark v. Morgan,* 73 Kan. 453, 9 Ann. Cas. 930, 85 Pac. 567, 36 L. R. A., N. S., 934; *Orr. v. Stewart,* 67 Cal. 275, 7 Pac. 693; *Hubbard v. Mulligan,* 13 Colo. App. 116, 57 Pac. 738; *Fariss v. Deming Inv. Co.,* 5 Okl. 496, 49 Pac. 926; *Rogers v. Minneapolis Threshing Mach. Co.,* 48 Wash. 19, 92 Pac. 774, 95 Pac. 1014; *Coburn v. Bartholomew,* 50 Utah, 566, 167 Pac. 1156; *Worthington v. Tipton,* 24 N. M. 89, 172 Pac. 1048; *Roberts v. Hudson,* 25 Wyo. 505, 173 Pac. 786; *Norris v. Heald,* 12 Mont. 282, 33 Am. St. 581, 29 Pac. 1121; *Klempp v. Northrop,* 137 Cal. 414, 70 Pac. 284; *Meinhold v. Walters,* 102 Wis. 389, 72 Am. St. 888, 78 N. W. 574; *Kneen v. Halin,* 6 Ida. 621, 59 Pac. 14; *Cheney v. Minidoka County,* 26 Ida. 471, 144 Pac. 343.)

The holding of the supreme court of the United States in the case of *Ruddy v. Rossi,* 248 U. S. 104, 39 Sup. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843, does not in any manner change this rule. (*First State Bank of Phillipsburg v. Durand,* 69 Mont. 184, 222 Pac. 434.)

Sec. 2296, U. S. Rev. Stats., does not prohibit the homesteader from creating a lien upon his homestead by his voluntary act. This statute was enacted for the purpose of preventing the creditor from in any manner acquiring an involuntary lien upon the land to secure satisfaction of a debt contracted by the homesteader before the issuance of patent. (*Lohman State Bank v. Grim,* 69 Mont. 444, 222 Pac. 1052; *First State Bank of Phillipsburg v. Durand, supra*; 1 Jones on Mortgages, 7th ed., p. 255, par. 177; *Klempp v. Northrop, supra.*)

Richards & Haga, *Amici Curiae.*

"The exemption under consideration is designed merely to protect the settler from a forced sale under execution on a debt contracted prior to the time designated, and does not preclude him from borrowing money and voluntarily creating a lien on the land by way of mortgage to secure the same, or prevent the enforcement of such a mortgage." (32 Cyc. 1084; 6 L. R. A., N. S., 934.)

"In the absence of a prohibitory statute a mortgage or pledge of exempt property is valid and the execution of such an instrument constitutes a waiver of the exemption as to the debt secured." (11 R. C. L. 544; 25 C. J. 107.)

The federal homestead laws do not prohibit an entryman from encumbering the land prior to patent. (*Wright v. Walker* (Wyo.), 225 Pac. 75; *First State Bank v. Durand*, 69 Mont. 181, 222 Pac. 434; *Thomas v. Wisner*, 66 Colo. 243, 180 Pac. 744; *Quinn v. Tennessee Coal, Iron etc. R. R. Co.*, 201 Ala. 46, 77 So. 340.)

Since the decision of the federal supreme court in the Ruddy case the Land Department of the United States, the co-ordinate branch of the government directly in charge of the lands in question, has followed the rule and practice laid down by it since 1882 and held that the entryman might mortgage his property prior to patent. (48 L. D. 582, 640.)

"A mortgage by the entryman prior to final proof for the purpose of securing money for improvements, or for any other purpose not inconsistent with good faith, is not considered such an alienation of the land as will prevent him from submitting satisfactory proof." (*Suggestions to Homesteaders*, 48 L. D. 389, 406.)

TAYLOR, J.—This action was brought by respondent to quiet title to lands and to cancel two mortgages which he had executed thereon. The lands are conceded to be the homestead entry of respondent, made under the laws of Congress. The mortgages were executed before final proof or final certificate or patent. He is admitted now to be the owner in fee, and claims that these mortgages are void and a cloud upon his title. Appellants demurred to the amended complaint for failure to state a cause of action. This demurrer was overruled, whereupon appellants separately answered and cross-complained, setting up their respective mortgages, and asking for a foreclosure thereof and the sale of the lands to satisfy the mortgage indebtedness. Respondent thereupon moved to strike appellants' answers and cross-complaints, and for judgment on the pleadings. The

court granted the motion to strike, and granted respondent judgment on the pleadings, canceling the mortgages in question. This appeal is from that judgment.

Counsel are agreed that the only question involved herein is whether a mortgage given by a homestead entryman in good faith, prior to patent, is valid as between the parties thereto. A decision of this question will be decisive of the five errors assigned by appellants.

Counsel for respondent relies upon *Ruddy v. Rossi*, 248 U. S. 104, 39 Sup. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843; *Williams v. Sherman*, 36 Ida. 494, 212 Pac. 971, and U. S. Rev. Stats., sec. 2296 (U. S. Comp. Stats. 1916, sec. 4551; 8 Fed. Stats. Ann., p. 575). The opinions in *Ruddy v. Rossi*, *supra*, and *Williams v. Sherman*, *supra*, must be considered and construed in the light of the rule that they are authoritative only on the facts on which they are founded. General expressions must be taken in connection with the case in which those expressions are used.

"There is a pronounced line of demarkation between what is *said* in an opinion and what is *decided* by it . . . . " (*State v. City of St. Louis* (Mo.), 145 S. W. 801.)

See, also, *Cohens v. Virginia*, 6 Wheat. (U: S.) 264, 5 L. ed. 257; 15 C. J., p. 941, sec. 332.

This court, in *Ruddy v. Rossi*, 28 Ida. 376, 154 Pac. 977, held that a homestead entry is liable to satisfaction of a judgment upon a debt contracted after issuance of a final certificate and before patent, upon the doctrine of the relation of the patent back to the date of the certificate. The supreme court of the United States (*Ruddy v. Rossi*, 248 U. S. 104, 39 Sup. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843) reversed that case.

U. S. Rev. Stats., sec. 2296 (U. S. Comp. Stats. 1916, sec. 4551, 8 Fed. Stats. Ann., p. 575), with relation to homestead lands, provides:

"No lands (ac) quired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

The debt involved in *Ruddy v. Rossi, supra,* was not secured by a mortgage, but the date of contracting it after final proof and before patent made the issue as to its being within the act. That case sets at rest all controversy over the meaning of the words of section 2296, "prior to the issuing of the patent therefor," by holding that the actual issuance of the patent is meant. The liability therein under consideration was one which the courts have treated and discussed as an involuntary liability, one created by law, not by the voluntary act of the homesteader. It is decisive only as to such "involuntary liability," the only kind involved in that case.

The court recognized the protection of the act as creating an "exemption," saying:

" . . . . It was proper to create the designated exemption," the purpose of which, in the opinion of the court, was "promptly to dispose of public lands and bring about their permanent occupation and development," and "to convert waste places into permanent homes."

If, as experience has demonstrated since the adoption of the homestead act, the power of a homestead entryman to mortgage his homestead entry has contributed, or will contribute, materially, to the purpose of Congress "promptly to dispose of public lands and bring about their permanent occupation and development," and "to convert waste places into permanent homes," it may, with as much reason, be contended that Congress did not intend to prohibit or make void the voluntary act of a homesteader in mortgaging his homestead entry for the purpose of securing funds to assist him in the occupation and development of his homestead. By any other construction given to the act, that prohibition would be accomplished.

The only question before this court in *Williams v. Sherman,* 34 Ida. 63, 199 Pac. 646, s. c. 35 Ida. 169, 205 Pac. 259, 21 A. L. R. 353, 36 Ida. 494, 212 Pac. 971, was the right of a purchaser under judgment foreclosing a mortgage executed by a homestead entryman upon unpatented land to a writ of assistance and to possession of the homestead premises,

the foreclosure having been had, sale made and sheriff's deed issued prior to final proof or patent. There was not presented in that case any question as to the estoppel of the mortgagor to claim title by reason of his after-acquired title inuring to the benefit of the mortgagee, for in that case there was as yet no after-acquired title; he had not received patent. While that case does discuss the validity of a mortgage made by a homestead entryman upon unoccupied public land, long prior to his homestead entry, that which was really decided therein is best stated in the last paragraph of the opinion on petition for rehearing, wherein this court said:

"We therefore adhere to our conclusion that the mortgage executed . . . . in so far as it pretended or attempted to affect the NE. ¼ of sec. 13 . . . . which was a part of the unsurveyed public domain of the United States, to which and in which the grantors had neither title nor color of title, conveyed to the grantee no interest whatever and was a nullity; that the subsequent proceedings had to foreclose said premises, . . . . together with the subsequent order of sale and attempted sale thereunder, were void and of no force or effect whatever, the court not having jurisdiction of the subject matter because of it being the property of the United States government; . . . . and that respondent's interference with their possession, after they established the validity of this homestead entry, was a naked trespass without color of authority."

C. S., sec. 6361, provides as follows:

"Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

This rule has been held to apply to title acquired under the homestead laws, although the title was in the United States when the mortgage was given. (*Lohman State Bank v. Grim,* 69 Mont. 444, 222 Pac. 1052; *Selway v. Daut,* 67 Mont. 262, 215 Pac. 646; *Weber v. Laidler,* 26 Wash. 144, 90 Am. St. 726, 66 Pac. 400; *Stark v. Duvall,* 7 Okl. 213, 54 Pac. 453; *Stewart v. Powers,* 98 Cal. 514, 33 Pac. 48; *Christy v. Dana,* 34 Cal. 548; *Kirkaldie v. Larrabee,* 31 Cal.

455, 89 Am. Dec. 205; *Adam v. McClintock,* 21 N. D. 483, 131 N. W. 394; *Spiess v. Neuberg,* 71 Wis. 279, 5 Am. St. 211, 37 N. W. 417; *Blanchard v. Jamison,* 41 Neb. 244, 15 N. W. 212.)

The great weight of authority sustains the validity of a mortgage given by a homestead entryman as a voluntary lien or waiver of the exemption of the statute, that the statute was intended to protect the entryman against involuntary liens, and is not a limitation upon his voluntary control over it. The rule is correctly stated in 32 Cyc. 1084:

"The exemption under consideration is designed merely to protect the settler from a forced sale under execution on a debt contracted prior to the time designated, and does not preclude him from borrowing money and voluntarily creating a lien on the land by way of mortgage to secure the same, or prevent the enforcement of such a mortgage."

This has been the holding, also, of the Land Department of the United States in an almost unbroken line of decisions. (*First State Bank v. Durand,* 69 Mont. 184, 222 Pac. 434; *Stark v. Morgan,* 73 Kan. 453, 9 Ann. Cas. 930, 85 Pac. 567, 6 L. R. A., N. S., 934; *Watson v. Voorhees,* 14 Kan. 328; *Fuller v. Hunt,* 48 Iowa, 163; *Hafemann v. Gross,* 199 U. S. 342, 26 Sup. Ct. 80, 50 L. ed. 220; *Lohman State Bank v. Grim, supra; Weber v. Laidler, supra; Stark v. Duvall, supra; Kirkaldie v. Larrabee, supra; Adam v. McClintock, supra; Spiess v. Neuberg, supra; Protection of Transferees and Mortgagees Under the Homestead Laws,* 48 L. D. 582.)

*Guaranty Savings Bank v. Bladow,* 176 U. S. 448, 20 Sup. Ct. 425, 44 L. ed. 540, directly recognized the right of a mortgagee of a homestead to notice of cancelation of the homestead entry of the mortgagor thereof, under the provisions of section 7 of the act of March 3, 1891 (26 Stats. at L. 1095, 1098, chap. 561).

The practical administration of the federal statute by the Land Department, while not controlling the courts in their interpretation, is entitled to respectful consideration.

"The practical construction given to an act of Congress, fairly susceptible of different constructions, by one of the executive departments of the government, is always entitled to the highest respect . . . . especially when important interests have grown up under the practice adopted. (*Bates Refrigerating Co. v. Sulzberger*, 157 U. S. 1, 34, 15 Sup. Ct. 508, 39 L. ed. 601; *United States v. Healey*, 160 U. S. 136, 141, 16 Sup. Ct. 247, 40 L. ed. 369.)" (*Webster v. Luther*, 163 U. S. 331, 16 Sup. Ct. 963, 41 L. ed. 179.)

" . . . . The practical construction given to an act of Congress fairly susceptible of different constructions, by those charged with the duty of executing it, is entitled to . great respect, and, if acted upon for a number of years, will not be disturbed except for cogent reasons." (*McLaren v. Fleischer*, 256 U. S. 477, 41 Sup. Ct. 577, 65 L. ed. 1052.)

Other courts, as well as the Land Department, have construed the decision in *Ruddy v. Rossi, supra*, as not affecting the validity of a mortgage given by a homestead entryman prior to patent, or overturning or reversing the decisions of the great majority of courts and of the Land Department theretofore rendered.

"Section 2296, Revised Statutes, has been quite generally held by the courts, as well as by the Land Department, not to invalidate a mortgage or other incumbrance of his land, given by a homesteader, to secure money with which to improve his land, 'or for any other purpose not in itself tending to impeach his *bona fides*,' even though the debt was contracted before the issuance of patent to the homestead." (*Lockwood v. Lounsbury*, 48 L. D. 637)

See, also, *Protection of Transferees and Mortgagees Under the Homestead Laws*, 48 L. D. 582.

The supreme court of Montana, in *First State Bank v. Durant, supra*, says of *Ruddy v. Rossi, supra:*

"The case was not one to test the validity of a mortgage given upon a homestead which had not yet ripened into. patent—a voluntary transaction founded upon even-handed dealings between the homesteader and the mortgagee, as in the present case. Counsel is therefore wrong in thinking

that the decision impinges in the least upon the consistent holdings of the Land Department of the government or of the courts."

The rule established by the great weight of authority before the decision in *Ruddy v. Rossi, supra,* together with the interpretation of that decision by other courts and the Land Department that it has not reversed such holdings, as well as the adherence to the rule by other courts in decisions rendered since the decision of *Ruddy v. Rossi,* although without direct comment thereon or reference thereto (*Wright v. Walker* (Wyo.), 225 Pac. 75; *Thomas v. Wisner,* 66 Colo. 243, 180 Pac. 744), seems to us to be reasonable. We therefore answer the only question presented herein, that a mortgage given in good faith by one who has made homestead entry on the public lands of the United States, prior to the issuance of his final receipt or patent, is valid as between the parties to the mortgage after the patent has been issued.

The judgment of the lower court is reversed and the cause remanded for further proceedings in accordance herewith. Costs awarded to appellants.

Wm. E. Lee, Budge and Givens, JJ., concur.

WILLIAM A. LEE, C. J., Dissenting.—This cause was first heard at the Pocatello, September, 1924, term, and the opinion of the court, with the specially concurring opinion of McCarthy, C. J., was filed October 31st thereafter, which affirmed the judgment of the lower court, upon the authority of *Ruddy v. Rossi,* 248 U. S. 104, 39 Sup. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843; overruling *Ruddy v. Rossi,* 28 Ida. 376, 154 Pac. 977.

A rehearing was allowed, and appellants, with counsel who appeared *amici curiae,* have exhaustively reargued the case, but no further argument has been made on behalf of respondent, his counsel having removed from the state. The court reverses its former decision. I think it due to the late Justice Dunn, and McCarthy, C. J., to state the reasons for the conclusions reached.

The action was to quiet title and cancel two mortgages respondent had given upon his homestead entry; the first to appellants, the Adolfs, for $2,800, for a second-hand threshing-machine; the second to Mulhall, for $265, for a team of horses. The two transactions were separate and distinct. Respondent assigned as a reason for these mortgages being invalid, that they were given upon unpatented government land which he had occupied as a homestead entry but had not resided thereon a sufficient time to earn a patent; that he had been erroneously informed that he had an interest in this homestead that he could mortgage, but upon learning that such was not the case he tendered a return of the property for which the mortgages were given and asked that the mortgages on his homestead be canceled. Appellants separately demurred, generally and specially, their demurrers were overruled, and they separately answered and cross-complained, setting up their separate mortgages and prayed for a foreclosure and sale of this homestead to satisfy the indebtedness. Therefore, the only question presented by this appeal is: Can this debt, secured by mortgage given by a homestead entryman prior to patent being earned, be enforced against such entry?

The former opinion held this homestead entry was not liable under the provisions of U. S. Rev. Stats., sec. 2296, to the satisfaction of a debt contracted prior to the issuance of patent; also that, under U. S. Rev. Stats., sec. 709, U. S. Comp. Stats. 1916, sec. 1214, 5 Fed. Stats. Ann., p. 724 (Jud. Code. sec. 237, as amended), this court in deciding such question is a court of intermediate jurisdiction and its decision is controlled by the decision of the United States supreme court.

In *Ruddy v. Rossi, supra,* the federal supreme court, among other things, said:

"Decision of this cause requires us to consider the meaning and validity of sec. 4 of the act (Rev. Stats., sec. 2296, Comp. Stats., sec. 4551) which provides:

" 'No lands acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt or debts, contracted prior to the issuing of the patent therefor.'

"Plaintiff in error made preliminary homestead entry of designated land within the state of Idaho August 6, 1903; submitted final proofs October 4, 1909; obtained final receipt and certificate November 12, 1909; final patent issued August 26, 1912. In 1914, two judgments were obtained against him: the first upon indebtedness incurred prior to November 12, 1909; the second upon debts contracted subsequent to that date and prior to patent. Executions were issued and levied upon the homestead; and thereupon original proceedings were begun to declare asserted liens invalid and a cloud upon the title. The court below held the first judgment unenforceable against the land, since it represented indebtedness which accrued prior to final entry. It further held the second judgment could be so enforced, as it was based upon debts contracted after final entry, at which time the homesteader became legally entitled to his patent. (*Ruddy v. Rossi,* 28 Ida. 376, 154 Pac. 977.)

"The language of sec. 4 is clear, and we find no adequate reason for thinking that it fails precisely to express the lawmakers' intention. . . . . and it is settled that Congress has plenary power to dispose of public lands. (*United States v. Gratiot,* 14 Pet. 526, 537, 10 L. ed. 573, 578.) . . . . The judgment of the court below must be reversed."

Notwithstanding the late pronouncement of the federal supreme court, overruling this court upon a question that is essentially the same, this court now says:

"The great weight of authority sustains the validity of a mortgage given by a homestead entryman as a voluntary lien or waiver of the exemption of the statute, that the statute was intended to protect the entryman against involuntary liens and is not a limitation upon his voluntary control over it."

The great weight of authority referred to consists of decisions of the federal Land Department and decisions of state courts that, with one exception, were decided prior to the Ruddy-Rossi case. It is not perceived how decisions of the land office or of the state courts can be authority against a holding of the United States supreme court, which

court alone can speak with finality on the question. It therefore becomes important to consider how that court has construed U. S. Rev. Stats., sec. 2296, sec. 4 of which reads:

"No lands acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt or debts, contracted prior to the issuing of the patent therefor."

The opinion in the instant case holds that the words used in the federal statute, "any debt or debts," does not include any debt secured by mortgage and that, because the debt in the Ruddy-Rossi case was not secured by mortgage, the decision has no application to the question here presented. That is to say, this court now holds that when the United States supreme court said: "The language of sec. 4 is clear and. we see no adequate reason for thinking that it fails precisely to express the lawmakers' intention," it intended to say, or did in legal effect say, the language of this section is clear and it will precisely express the lawmakers' intention by interpolating therein, after the words, "any debt or debts," the additional words, "except debts secured by mortgage." I see no "adequate reason for thinking" the language used in the Ruddy-Rossi case intends to interpolate this exception and exclude from the terms of this statute, debts secured by mortgage. On the contrary, by all the rules of construction, the words, "in any event," followed by the words, "any debt or debts," are comprehensive enough to include all events and all classes of debts.

It is further said that the purpose which Congress had in view in passing this statute was to promptly dispose of public lands and bring about their permanent occupation and development. I think, however, it would be difficult to give any substantial reason why under the terms of this statute, a debt voluntarily contracted for food or clothing for an entryman's family cannot be enforced against his homestead by ordinary process, and can be enforced against it for a debt contracted for worthless second-hand machinery, because he had been induced to believe that he had a right to mortgage such homestead. Nor am I able to see why such

a construction of this statute in any manner tends to aid in carrying out the purpose of Congress in its endeavor to secure the permanent occupation and development of its public lands.

However, the important and only serious consideration that should influence this court in the determination of this question is to follow the construction given to this statute by the United States supreme court in the Ruddy-Rossi case. This court cannot make a distinction between the class of debts that it thinks should be or should not be within the terms of the statute, unless the court of ultimate conclusion indicates a purpose to make such distinction, which I think it has not done in the Ruddy-Rossi case. I cannot better state the reason upon which the former decision was based than was done by McCarthy, C. J., in his specially concurring opinion, written upon the former hearing, wherein he said:

"Appellant asks this court to follow the line of state decisions which distinguish between a voluntary and an involuntary lien in construing U. S. R. S., sec. 2296. However, the question is concededly a federal one. So far as I am aware the Supreme Court of the United States has not passed squarely upon it. There is a *dictum* in *Hafeman v. Gross*, 199 U. S. 342, 26 Sup. Ct. 80, 50 L. ed. 220, at 224, which might be considered an implied approval of the doctrine of the state courts. Subsequently the Supreme Court of the United States decided *Ruddy v. Rossi*, 248 U. S. 104, 39 Sup. Ct. 46, 63 L. ed. 148, 8 A. L. R. 843. As stated in the majority opinion in the instant case, the decision in *Ruddy v. Rossi* gave the statute a literal construction, overruling a long line of state decisions which had given it a liberal one. It is true that in *Ruddy v. Rossi* the Supreme Court interpreted the word 'patent,' whereas in this case we are called on to interpret the words 'shall in any event become liable to the satisfaction of any debt.' No reason appears for adopting a different rule of construction in the two cases. Applying to the language in question the literal rule of construction adopted in *Ruddy v. Rossi*, it appears that to hold valid a mortgage on a homestead given before the issuance of the patent would be mak-

41 Idaho—7

ing the land liable to the satisfaction of a debt contracted prior to the issuance of the patent which the statute forbids 'in any event.' For the above reasons I feel constrained to concur in the majority opinion."