## ALASKA RURAL REHABILITATION CORPORATION
### v. UBERT et ux.

### SAME v. ARCHER et al.

### SAME v. SIEBER et al.

No. A–3411, A–3410, A–3415.

District Court of Alaska. Third Division. Anchorage. March 20, 1945.

Warren N. Cuddy and Edward L. Arnell, both of Anchorage, Alaska, for plaintiff.

J. Gerald Williams, of Anchorage, Alaska, for defendants.

DIMOND, District Judge.

This suit was brought for the foreclosure of a "contract for the sale and purchase of realty" amounting to a mortgage, on 40 acres of land, Homestead Tract No. 160, situated in the Matanuska Valley, Territory of Alaska, and foreclosure of certain chattel mortgages covering structural improvements, furniture and livestock located on the land. The defendants abandoned the homestead in the fall of 1944 and departed from the Territory. Most of the personal property, aside from the buildings on the land, was either disposed of by the defendants before they left the homestead, or has been lost or destroyed.

The contract of purchase and sale, the mortgage provisions of which are here sought to be foreclosed, is detailed and circumstantial. It provides for the payment to the plaintiff of a total of $1,180, bearing interest at 3%,

over a period of 29 years, at the rate of $95.91 per year, first payment to be made on November 15, 1940, and the final payment on November 15, 1969. The relevant portion of the contract for the purposes of this opinion reads as follows:

"The corporation hereby expressly reserves a first lien and mortgage on the purchasers' right, title and interest now held *or hereafter acquired* in the above described land and improvements thereon, and on said land itself, to secure the payment of any and all sums due hereunder, and the fulfillment of any and all terms of this contract * * * and the purchaser, and his wife, hereby mortgage the same accordingly to the corporation." (Italics supplied.)

As background, it may be well to recite that the defendants were heads of a family eligible for public relief, residing in the States and brought to Alaska at government expense in the year 1935. This family, and other families, some two hundred in all, were settled in the Matanuska Valley about fifty miles north of the city of Anchorage. Much of the valley land is deep and fertile and fruitfully responds to cultivation. The plaintiff corporation, an agency of the government, built houses and barns for all of the settlers, aided them in clearing the land and putting the same under cultivation, and furnished livestock and machinery. In 1938 when such of the settlers as then remained were well established, the contract sued upon in this action, and similar contracts with other settlers were entered into. In no case was there any charge made for the land itself, and in practically all cases no attempt was made to secure repayment of all funds expended by the government on behalf of any particular family, including the one here involved. It was conceived, however, that the settlors should repay to the government a fair proportion of the funds expended on their behalf for dwelling houses and other farm buildings, and for livestock and machinery, and for clearing land. Ample credit was allowed for everything supplied by the settlers. The contract entered into appears, in all respects, reasonable and even generous un-

der the circumstances. The defendants lived on the land and occupied the buildings from 1935 until 1943. Some of the land was placed under cultivation and a considerable portion of it was cleared and "bulldozed," being thus made ready for cultivation. No payment whatever of principal or interest was made to the plaintiff, or to any other agency of the government, of any of the funds so spent by the government for the benefit of the defendants.

Under date of February 19, 1944, patent was issued to defendant Lawrence J. Ubert for the land involved and was delivered to him on June 14, 1944. The patent, in usual form in such cases, is as follows:

"4—1003

"Anchorage 08612

"The United States of America,

"To all to whom these presents shall come, Greeting:

"Whereas, a Certificate of the Register of the Land Office at Anchorage, Alaska, has been deposited in the General Land Office, whereby it appears that, pursuant to the Act of Congress of May 20, 1862 [12 Stat. 392], 'To Secure Homesteads to Actual Settlors on the Public Domain,' and the acts supplemental thereto, the claim of Lawrence Joseph Ubert has been established and duly consummated, in conformity to law, for the northwest quarter of the southeast quarter of Section nine in Township Seventeen North of Range two east of the Seward Meridian, Alaska, containing forty acres.

according to the Official Plat of the Survey of the said Land, on file in the General Land Office:

"And know ye, that there is, therefore, granted by the United States unto the said claimant the tract of land above described:

"To have and to hold the said tract of Land, with the appurtenances thereof, unto the said claimant and to the heirs and assigns of the said claimant forever: subject to any vested and accrued rights for mining, agricultural, manu-

facturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States.

"And there is also, reserved to the United States a right of way for the construction of railroads, telegraph and telephone lines in accordance with the Act of March 12, 1914 (38 Stat. 305 [48 U.S.C.A. § 301 et seq.])

"In testimony whereof, I, Franklin D. Roosevelt, President of the United States of America, have caused these letters to be made Patent, and the seal of the General Land Office to be hereunto affixed.

"Given under my hand, at the City of Washington the Nineteenth day of February in the year of our Lord one thousand nine hundred and forty-four and of the Independence of the United States the one hundred and sixty-eighth.

"By the President:   Franklin D. Roosevelt
   "By Ruth W. Talley, Secretary.
      "R. S. Clinton,
     "Chief, Patent Division,
     "General Land Office.
"Recorded: Patent Number 1117904"

■ That a mortgage may validly cover after acquired property is too well established to admit of doubt: Pennock v. Coe, 23 How. 117, 64 U.S. 117, 16 L.Ed. 436; Central Trust Co. of New York v. Kneeland, 138 U.S. 414, 11 S.Ct. 357, 34 L.Ed. 1014.

For a collection of cases on the subject see: Guaranty Trust Co. of N. Y. v. Minneapolis & St. L. R. Co., 8 Cir., 36 F.2d 747.

The only serious question presented concerns the effect of the issuance of a patent upon the mortgage contract above mentioned. Attention has been invited to the pro-

visions of 42 Stat. 502, 43 U.S.C.A. § 175, which reads: "No lands acquired under the provisions of the homestead laws and laws supplemental and amendatory thereof shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor", and to the provisions of the act of May 14, 1898 extending the homestead laws and providing for rights of way for railroads in Alaska, and for other purposes, 30 Stat. 409, as amended by the Act of March 3, 1903, 32 Stat. 1028, 48 U. S.C.A. § 371, Sec. 300, Compiled Laws of Alaska, 1933, a part of which is as follows:

"The right of any homestead settler to transfer any portion of the land so settled upon, as provided by section 174 of Title 43, shall be restricted and limited within the district of Alaska as follows: For church, cemetery, or school purposes to five acres, and for the right of railroads across such homestead to one hundred feet in width on either side of the center line of said railroad; and all contracts by the settler made before his receipt of patent from the Government, for the conveyance of the land homesteaded by him or her, except as herein provided, shall be held null and void."

It will be observed that the general law, Title 43, Sec. 175, first quoted above, embraces an inhibition as to "debts," but that the law made especially applicable to Alaska by the amendatory Act of 1903 extends the inhibition to "all contracts * * * for the conveyance of the land * * * except as herein provided." It seems clear that the exception mentioned in the Act of 1903, modeled upon 43 U.S.C.A. § 174, does not cover any condition presented in the case at bar.

The question therefore arises as to whether under the provisions of the statutes quoted above, the mortgage contract sued upon here extends to and affects the title to the land covered by the patent issued to Lawrence J. Ubert by the United States on February 19, 1944 and delivered to him on June 14, 1944.

The general law embraced in 43 U.S.C.A. § 175, has been the subject of ample judicial consideration. While the views of the courts considering this statutory provision are not harmonious, the great weight of them in number, and, in my opinion, an even greater weight in reason, operate to sustain the claim of the plaintiff in this action. No compelling argument has even been suggested why the homesteaders themselves should not be permitted to waive the benefit of the law, or why they should not be subject to the doctrine of estoppel after they sign a mortgage and thereafter seek to repudiate it upon the ground that the law permits them to do so. To virtually encourage a man to be dishonest is neither good law nor good morals. Fortunately, a proper and reasonable construction of the law does not require any such result. A full discussion of the matter can be found in the cases of: Stark v. Morgan, 1906, 73 Kan. 453, 85 P. 567, 6 L.R.A.,N.S., 934; and in Bashore v. Adolf, 1925, 41 Idaho 84, 238 P. 534, 41 A.L.R. 932.

The editor's note appearing in connection with Stark v. Morgan in the L.R.A. report is helpful. Such also is the firm policy of the Land Office of the government embraced within the Department of the Interior, having jurisdiction of the public lands.

The only judicial cloud cast upon this view seriously deserving of attention is to be found in the case of: Ruddy v. Rossi, 1918, 248 U.S. 104, 39 S.Ct. 46, 63 L.Ed. 148, 8 A.L.R. 843. But in that case sale of the property under execution was involved and no claim was or could be made that the homesteader had ever waived the benefit of the statute, or that he was estopped to claim it, and the court sustained the statute as a valid exercise of legislative power. So, as to the construction of the general law set out in 43 U.S.C.A. § 175, the answer appears sufficiently obvious, and that answer is, that the mortgage follows the after acquired title.

From lack of authoritative construction, more difficulty is encountered in applying the special law enacted for Alas-

ka in 1903 which is quoted above, but, as counsel has indicated, it seems probable that it must be read in connection with the provisions of 43 U.S.C.A. §§ 162, 164, 174.

Sec. 162 provides that the applicant for entry must make an affidavit embracing, among other declarations, the following:

"That he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself, or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person, except himself, or herself, * * *."

Sec. 164 requires the applicant, before patent may be issued, to make affidavit that:

" * * * No part of such land has been alienated, except as provided in section 174 * * *."

While Sec. 174 says:

"Any bona fide settler under the homestead,* or other settlement law shall have the right to transfer, by warranty against his own acts, any portion of his claim for church, cemetery, or school purposes, or for the right of way of railroads, telegraph, telephones, canals, reservoirs, or ditches, for irrigation or drainage across it; and the transfer for such public purposes shall in no way vitiate the right to complete and perfect the title to his claim."

It seems evident that Congress, in the enactment of the law of 1903, intended absolutely to ban the same type of contracts which the homestead applicant was required to renounce in Secs. 162 and 164 of Title 43, and to save the exceptions permitted by Sec. 174, and no more. To the renunciatory declaration of the applicant was added the positive veto of the law declaring null and void that which the

---

* The comma following the word "homestead" should probably be omitted.

homesteader had said he would not do and had not done, and the bar of the statute is expressly confined to contracts for the "conveyance" of the homesteaded land. Section 164 uses the word "alienated." A mortgage is a lien, not a conveyance or an alienation. The Act of 1903, with all of its implications, contains nothing to prevent the lien of the mortgage from attaching to the after-acquired patent title.

Moreover, under any theory of the law, it cannot be reasonably asserted that Congress intended a beneficiary of government bounty to defraud the government of its just claim through acquisition of a title to land from the same government which had so generously extended its bounty. In this case it is indisputable that the United States government established the defendants on the land and spent a good many thousands of dollars on their behalf in building a comfortable dwelling house, a barn, and other buildings, supplying them with livestock and machinery, clearing the land for their use, making it all available without any contribution from the defendants other than their labor. Even food for the use of the defendants and their family was provided for a considerable period of time. The government also furnished the opportunity to the defendant Lawrence J. Ubert, as head of the family, to acquire title to the property, namely, a patent from the government, and protected him in his occupancy of the land until by settlement and occupation and cultivation he could acquire such title. For its own protection, and having due regard for the conservation of funds that are brought into the federal treasury by taxation, the government requested the defendants to execute the mortgage for repayment to the government of a portion of the money which had been so spent for the benefit of the defendants, and the defendants willingly signed the contract, pledging not only whatever title they had in the land through present occupancy, but also after-acquired title, which must of necessity be obtained from the government. It is not conceivable that the government agents would ever have permitted the issuance of patent except for the execution and delivery of the contract

here sued on by defendants. To permit the defendant Lawrence J. Ubert now to retain his after-acquired title to the land and thus, perhaps, make it impossible for the government to recover or reclaim any part of the funds so spent for the benefit of the defendants, would be so unconscionable as to be shocking. Congress cannot be presumed to have intended any such result.

■ The judgment could well rest here. But another overriding principle of settled law not only supports but demands the same result. It is the uniform and well-nigh unbroken rule in statutory construction that the government as sovereign is not bound by the restrictive terms of statutes unless expressly mentioned. Statutes of limitations are only one example. The application of the doctrine is virtually without limit wherever the sovereign government is involved. Dollar Savings Bank v. U. S., 1873, 19 Wall. 227, 86 U.S. 227, 22 L.Ed. 80; U. S. v. Herron, 1873, 20 Wall. 251, 87 U.S. 251, 22 L.Ed. 275; Guaranty Title & Trust Co. v. Title Guaranty Surety Co., 1912, 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706.

■ The same exemption of the government from the restrictive provisions of the Act of 1903 must be applied here. Therefore, the ruling is that the title acquired by Lawrence J. Ubert in the patent issued to him by the United States on February 19, 1944, is subject to the lien of the mortgage sued upon in this action.

Similar issues are involved in two other cases tried on the same day, namely, Alaska Rural Rehabilitation Corporation v. P. R. Archer and Dorothy Archer, No. A–3410, and Alaska Rural Rehabilitation Corporation v. J. R. Sieber and Albertina Sieber, No. A–3415. The decision in all three cases is the same: the lien of the mortgage contract sued upon in each case attaches to the after-acquired patent title.

Findings and decree in each case may be prepared accordingly.